**Walter J. BLAIR, Appellant,**

v.

**Bill ARMONTROUT, Appellee.**

**Walter J. BLAIR, Appellant,**

v.

**William ARMONTROUT; William Webster, Appellees.**

No. 92–1734.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1992.

Decided Sept. 18, 1992.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 3, 1992.

---

Kent E. Gipson, Kansas City, Mo., argued, for appellant.

Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, Mo., argued, for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON and HEANEY, Senior Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Walter J. Blair appeals from an order of the district court[1] denying habeas corpus relief under 28 U.S.C. § 2254 (1988), and his motion for relief from judgment under Fed.R.Civ.P. 60(b)(6). Blair urges five grounds on appeal, but we will devote extended discussion to only one issue: Blair's claim that striking African Americans from his jury panel violated his right to equal protection of the law guaranteed by the Fourteenth Amendment under *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).[2] We affirm the district

1. The Honorable Scott O. Wright, Senior United States District Judge for the Western District of Missouri.

2. The Supreme Court overruled *Swain* in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

court's denial of the writ and Blair's 60(b)(6) motion.

Blair was convicted of capital murder as a result of the death of Kathy Jo Allen, who was scheduled to testify as the victim in the rape trial of Larry Jackson. The Missouri Supreme Court affirmed Blair's conviction and sentence of death.[3] *State v. Blair*, 638 S.W.2d 739 (Mo.1982) (en banc), *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983). Blair then filed a motion for post-conviction relief under Mo. Sup.Ct. Rule 27.26.[4] After holding a hearing, the circuit court denied Blair relief, and the Missouri Court of Appeals for the Western District of Missouri affirmed that judgment. *Blair v. State*, 683 S.W.2d 269 (Mo.Ct.App.1984). Blair then petitioned for habeas corpus relief under 28 U.S.C. § 2254. The district court denied relief, *Blair v. Armontrout*, 643 F.Supp. 785 (W.D.Mo.1986), and we affirmed. *Blair v. Armontrout*, 916 F.2d 1310 (8th Cir.1990). We denied Blair's petition for rehearing, and the Supreme Court denied Blair's petition for certiorari. —— U.S. ——, 112 S.Ct. 89, 116 L.Ed.2d 62 (1991).

While Blair's first appeal was pending before this court, Blair filed a pro se petition for writ of habeas corpus. Blair sought review of his exhausted constitutional claims which he alleged his appointed appellate counsel omitted from his habeas petition without his consent. The district court ordered that this second habeas petition be held in abeyance until this court rendered its decision. *Blair v. Armontrout*, No. 87–0302–CV–W–5, Order (W.D.Mo. July 2, 1987). After this court affirmed the district court's denial of Blair's first habeas petition, Blair moved for a consolidation of claims and for relief from the district court's judgment under Fed.R.Civ.P. 60(b)(6). The district court conducted a hearing and consolidated the two habeas petitions. Blair presented six grounds for relief. He claimed that: (1) the Kansas City, Missouri, Police Department obtained inculpatory statements from

him after his arrest in violation of his Fifth, Sixth, and Fourteenth Amendment rights; (2) the trial court's failure to instruct the jury on the lesser-included offense of first-degree felony murder, and the Missouri Supreme Court's denial of this claim on direct appeal violated his Eighth and Fourteenth Amendment rights; and (3) the State failed to disclose to the jury a claimed promise of leniency to witness Ernest Jones on pending charges, in violation of Blair's rights to due process and equal protection. The district court held that these three claims were successive because the claims were raised in Blair's first habeas petition, and thus, procedurally barred. *Blair v. Armontrout*, Nos. 85–0155–CV–W–5, 87–0302–CV–W–5, slip op. at 15–16 (W.D.Mo. Feb. 24, 1992).

The district court also considered Blair's remaining three claims that: (1) the prosecutor injected racial prejudice into his closing argument in violation of the Eighth and Fourteenth Amendments; (2) Blair received ineffective assistance of counsel because his trial counsel failed to interview and present the testimony of two witnesses, and (3) the prosecutor used peremptory challenges to strike all the remaining African Americans from the jury, in violation of Blair's right to equal protection guaranteed by the Fourteenth Amendment under *Swain*, 380 U.S. 202, 85 S.Ct. 824. The district court held that these three claims were abusive because they were not raised in Blair's first habeas petition. Slip op. at 6 (citing *McCleskey v. Zant*, —— U.S. ——, 111 S.Ct. 1454, 1468, 113 L.Ed.2d 517 (1991)). The district court then considered whether Blair could avoid procedural default of these claims by showing cause for failing to include them in his earlier petition and prejudice from the exclusion of the claims, or by establishing a "fundamental miscarriage of justice." Slip op. at 10–14. With respect to each of these claims, the district court ruled that Blair failed to meet his burden of showing cause and prejudice

---

**3.** The procedural history of this case is set out in greater detail in *Blair v. Armontrout*, 916 F.2d 1310, 1315 (8th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 89, 116 L.Ed.2d 62 (1991).

**4.** Rule 27.26 was repealed effective January 1, 1988.

or a fundamental miscarriage of justice. *Id.*

The district court denied habeas relief and first dissolved Blair's stay of execution, but later granted it. We denied the motion to set aside the stay, but expedited this appeal.

## I.

■ We first consider a procedural issue Blair raises. Blair argues that the district court erred by treating his Rule 60(b)(6) motion as the functional equivalent of a second petition for a writ of habeas corpus.

We reject Blair's argument. The district court followed our precedent in treating the motion as a second habeas petition. In *Smith v. Armontrout,* 888 F.2d 530 (8th Cir.1989), we held that a motion to remand was the functional equivalent of a second or successive habeas corpus petition, and that if such petition would be dismissed as abusive of the writ, the motion to remand should also be denied. *Id.* at 540. We made a similar ruling in *Simmons v. Lockhart,* 856 F.2d 1144, 1146 (8th Cir.1988). Likewise, the Eleventh Circuit has squarely held that claims like the ones advanced here should be raised in a successive petition for habeas corpus, rather than a Rule 60(b) motion. *Lindsey v. Thigpen,* 875 F.2d 1509, 1511–12, 1515 (11th Cir.1989). We also observe that the Supreme Court has treated litigation under 42 U.S.C. § 1983 (1988) as abusive and unworthy of a stay of execution. *Gomez v. United States District Court,* —— U.S. ——, ——, 112 S.Ct. 1652, 1653, 118 L.Ed.2d 293 (1992).

The district court did not err in treating the Rule 60(b) motion as the equivalent of a second petition for writ of habeas corpus.

## II.

■ Blair argues that the district court erred in concluding that his claims regarding the failure to instruct on the lesser-included offense of first-degree felony murder and the failure to disclose critical impeaching information concerning witness Ernest Jones were successive claims and, therefore, procedurally barred.

Blair is entitled to a second review of successive claims if the "ends of justice" so require. *Sanders v. United States,* 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963). Blair contends that he qualifies for a second review of these claims under this exception. Specifically, he contends that this court should re-examine its previous opinion with respect to his jury instruction claim because subsequent federal and state court decisions have "completely undermined" the reasoning this court used in denying him relief on this claim. He argues that the failure to instruct on the lesser-included offense violates his due process rights under *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), and that the Missouri Supreme Court's "capricious and result-oriented" disposition of this issue violated his right to equal protection. Along similar lines, he says that this court should revisit his claim that the prosecution knowingly used the perjured testimony of witness Jones because this court did not consider *State v. Patterson,* 618 S.W.2d 664 (Mo.1981) (en banc), in its earlier decision.

The district court refused to consider these two claims, ruling that the claims were successive, and therefore, procedurally barred.[5] Slip op. at 15–16. The district court concluded that the "ends of justice" did not require that these claims be reviewed again because Blair failed to make a "colorable showing of factual innocence" under *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986). Slip op. at 8, 15–16. A plurality of the Supreme Court explained in *Kuhlmann* that the "ends of justice" permit federal courts to examine the merits of a successive claim "only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence." 477 U.S. at 454, 106 S.Ct. at 2627. The district court rejected Blair's argument that the plurality opin-

---

5. The district court also concluded that Blair's confession claim was successive and procedurally barred. Slip op. at 15. Blair does not raise any issues relating to his confessions in this appeal.

ion in *Kuhlmann* should not be applied. Slip op. at 15.

The Supreme Court recently ended all questions about the status of the plurality opinion in *Kuhlmann.* The Supreme Court held in *Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), that when there has been no showing of cause and prejudice in successive, abusive, or procedurally defaulted habeas claims, there must be a showing of actual innocence. *Id.* —— U.S. at —— – ——, 112 S.Ct. at 2517–19. The Court explained that "to show 'actual innocence' one must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Id.* —— U.S. at ——, 112 S.Ct. at 2517.

Blair now argues that Jones' testimony, coupled with the instruction error, establishes a colorable claim of factual innocence. This, however, is simply a reargument of what this court rejected in Blair's habeas appeal. 916 F.2d at 1316–20, 1325–31. We do not believe that such an argument can satisfy the *Kuhlmann* actual innocence standard, as clarified by *Sawyer.* Accordingly, the district court did not err in concluding that because Blair made no showing of actual innocence, these two successive claims cannot be re-examined.

Our discussion could end at this point based on Blair's failure to satisfy the *Kuhlmann* and *Sawyer* tests. We simply add that Blair's argument based on the equal protection issues discussed in *Parker v. Dugger,* 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991), and the intervening state court decisions of *State v. Stepter,* 794 S.W.2d 649 (Mo.1990) (en banc), and *State v. Grebing,* 787 S.W.2d 877 (Mo.Ct. App.1990), do not convince us that we should revisit the instruction issue. *Parker* generally recognizes equal protection issues arising from the weighing of aggravating and mitigating circumstances when imposing the death penalty, and fails to reach the issue before us. 498 U.S. at —— – ——, 111 S.Ct. at 737–40. Similarly,

neither *Stepter* nor *Grebing* demonstrate reason for considering the instruction issue again. *Stepter* addressed the question of whether there was evidence to support submitting a second-degree murder instruction to the jury, 794 S.W.2d at 652–54, and *Grebing* questioned the sufficiency of evidence in a first-degree murder conviction on facts far removed from those here. 787 S.W.2d at 880–81. Likewise, we reject Blair's argument that we should reconsider his claim that the state knowingly used perjured testimony in light of *Patterson,* 618 S.W.2d at 665. *Patterson* is not new law. Blair has failed to establish circumstances requiring a second review of these claims.

### III.

We now turn to the three claims that the district court concluded constituted abusive claims.

 Blair argues that the prosecutor's closing argument violated his Eighth and Fourteenth Amendment rights. During closing argument in the penalty phase of Blair's trial, the prosecutor referred to the "attractive" girl[6] awakening and staring into the gun held by "this black man." The position that this statement was a constitutional error first appeared in the dissenting opinion in this court's first decision. 916 F.2d at 1347–48, 1351–52 (Heaney, J., dissenting). Blair's trial counsel did not object to this statement, and Blair did not raise this issue in his direct appeal or in his state post-conviction proceedings. Similarly, Blair made no mention of this claim in his pro se petition for writ of habeas corpus, amended petition filed by appointed counsel, or any other pro se filing made in the district court or this court before this court issued its opinion in Blair's first habeas appeal.

The district court held that Missouri's procedural rules prevented the state courts, and hence, the federal courts, from re-examining this claim. Slip op. at 13. The district court rejected Blair's argument that the failure of Blair's trial and appel-

---

6. The prosecutor did not identify the victim's race or compare her race to Blair's.

late counsel to preserve this issue for review constituted ineffective assistance of counsel, so as to make a showing of cause and prejudice. *Id.*

Blair argues that the district court erred in concluding that his closing argument claim is procedurally barred. He raised this claim in state court by filing a petition for writ of habeas corpus in the Missouri Supreme Court on April 11, 1991, and argues that the procedural ruling by the Missouri Supreme Court dismissing this petition is not an adequate and independent ground barring federal court review. He says that the Missouri Supreme Court has not firmly established or consistently applied the abuse of the writ procedural bar.

We read Missouri cases to consistently hold that a claim has been defaulted when there is no objection to the error lodged at trial, and the issue is not raised on direct appeal or post-conviction proceedings. *See, e.g., Fields v. State,* 468 S.W.2d 31 (Mo. 1971). One notable exception is *Benson v. State,* 611 S.W.2d 538, 541 (Mo.Ct.App. 1980). We specifically rejected the argument Blair now makes in *Byrd v. Delo,* 942 F.2d 1226, 1232 (8th Cir.1991). *Byrd* is further direct authority to reject Blair's position that his 1991 petition for habeas corpus, which the Missouri Supreme Court rejected on procedural grounds, removed the state procedural bar to this claim. *Id.*

Blair also says that we can review the merits of this claim under the "fundamental miscarriage of justice" exception noted in *Smith v. Murray,* 477 U.S. 527, 537–38, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986). Blair, however, has failed to demonstrate that but for this alleged constitutional error, no reasonable juror would have found him eligible for the death penalty. *Sawyer,* —— U.S. at ——, 112 S.Ct. at 2517. The district court observed that the single reference to the defendant's race was already "obvious to the jury." Slip op. at 19–20. Our review of the trial transcript does not show that the prosecutor encouraged the jury to use race as a factor in determining Blair's conviction or sentence. This may well explain the lack of objection

at trial. The statement, in the context of the trial, was not a constitutional violation.

■ Blair also argues that he received ineffective assistance of trial counsel because counsel declined to interview or call two witnesses, Q.T. Lee and Clarence Wilson. Our earlier opinion discusses this claim only in response to the arguments set forth in the dissent. 916 F.2d at 1332–33, n. 26. The Jackson County Circuit Court considered this issue in the Rule 27.26 proceedings. The Missouri Court of Appeals held that counsel was not ineffective, pointing to the evidence established at the hearing that trial defense counsel attempted to locate the witnesses and were aware of their potential testimony, but did not call them because their testimony would be inconsistent with the defense theory that Ernest Jones committed the crime. *Blair v. State,* No. WD 35053, slip op. at 25–26 (Mo.Ct.App. July 31, 1984).

Neither Blair's pro se habeas petition nor his amended petition filed by appointed counsel alleged that he received ineffective assistance of counsel due to counsel's failure to call these two witnesses. Further, Blair did not raise this issue in his pro se briefs, briefs of counsel, motion for remand to this court, or the second petition filed with the district court and held in abeyance.

Nevertheless, Blair argues that his appointed habeas counsel was ineffective by failing to raise this issue so as to demonstrate cause under *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The district court rejected this argument, observing that the state trial and appellate courts found the argument concerning the failure to call these witnesses meritless. Slip op. at 14.

■ Blair also suggests that the testimony of these two witnesses would have provided additional independent evidence to bolster other evidence that Ernest Jones killed Allen, and the claim should be reconsidered under the "fundamental miscarriage of justice" exception. Factual findings of the state courts, however, indicate that these witnesses were not called as a matter of trial strategy, as their testimony

conflicted with the defense theory. Slip op. at 25 (Mo.Ct.App. July 31, 1984). These findings are entitled to a presumption of correctness under 28 U.S.C. § 2254(d); *Laws v. Armontrout*, 863 F.2d 1377, 1381 (8th Cir.1988), *cert. denied*, 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989). Thus, we cannot say that trial counsel acted unreasonably or that the failure to call these witnesses demonstrates prejudice under *Strickland v. Washington*, 466 U.S. 668, 690–96, 104 S.Ct. 2052, 2065–69, 80 L.Ed.2d 674 (1984). Further, we doubt that the failure to call these witnesses demonstrates actual innocence under *Sawyer*. —— U.S. at ——–——, 112 S.Ct. at 2517–19. Their testimony, as found by the state courts, was inconsistent with Blair's trial defense.

The district court did not err in rejecting these two abusive claims.

## IV.

Blair contends that the prosecution violated his right to equal protection by using its peremptory challenges to remove all black venire members from the jury in violation of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759.

█ There were ninety-four panel members called for Blair's trial. Seventeen of these members were black, and twelve of these jurors were excused on the issues of sequestration and views on the death penalty. Of the five remaining black jurors, one was struck by the defense because he knew Blair. The state used four peremptory challenges to strike the remaining four blacks, leaving an all-white jury.

Blair moved to quash the jury panel, alleging that the proportion of blacks in the county was greatly in excess of the numbers of black jurors summoned. A record was made with specific reference to the blacks called for each jury panel. Blair argued that the selection of jurors from Jackson County, Missouri, was unconstitutional in that jurors were not called in as nearly equal numbers as possible from voting wards and precincts, as is required. Before impaneling the jury, the trial court held a hearing on Blair's motion to quash

the jury panel. The Jury Commissioner of Jackson County testified, describing the process of summoning jury panels from voter registration lists.

The trial court denied Blair's motion to quash, and Blair's counsel raised the issue again in his motion for new trial. At least two witnesses testified about a voter registration drive to increase the number of black registered voters, and that there were very large numbers of unregistered voters in six wards in Kansas City, Missouri, whose population was primarily black.

Following the trial court's denial of Blair's motion for new trial, Blair argued that there was systematic exclusion of black jurors, in that census figures showed the population of Jackson County, Missouri, to be 20 percent black, and that the representation of blacks on juries in Jackson County was not in this percentage. He argued that the 30,000 unregistered black voters who could qualify for jury duty but had not done so by failing to register, established the exclusion. In making this argument, Blair's counsel relied on *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), and *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

The Missouri Supreme Court held that Blair's evidence of the composition of the jury panel and petit jury was inadequate to show that the representation of this group, and jury venires as a whole, was not fair and reasonable under *Taylor* and *Duren*. *Blair*, 638 S.W.2d at 753. Although Blair did not cite *Swain*, the Missouri Supreme Court concluded that Blair had "failed to establish that the state has repeatedly, in case after case, utilized its peremptory challenges to exclude blacks from juries and has thereby failed to establish the systematic exclusion of blacks." *Id.* (citing *Swain*, 380 U.S. at 208, 85 S.Ct. at 829).

Thereafter, Blair filed a motion for postconviction relief under Rule 27.26. Blair argued that he did not receive a fair trial because the jury did not represent a fair cross-section of the community. The Mis-

souri Court of Appeals affirmed the circuit court, ruling that the issue had been decided on direct appeal and could not be raised in post-conviction proceedings. 683 S.W.2d 269 (Mo.App.1984).

Under this record, there can be no dispute that Blair raised and exhausted this claim in his state court proceedings. The district court did not err in so finding.

Whether Blair preserved a *Swain* issue in his federal court proceedings is not so clear. After exhausting his state court remedies, Blair filed a pro se habeas petition. Blair claimed that he was "denied a jury that represented a full and fair cross-section of the community" and that he was "tried by a guilty prone jury." He complained that the state was allowed to death-qualify the jury and strike for cause all those potential jurors who could not impose the death penalty even if they found him guilty. The petition also stated that it did not contain all points of error known to Blair, and that he was denied access to his legal papers and could not submit a complete petition. The petition states that "Movant will also rely upon appointed counsel to properly word and present all claims."[7] The district court appointed counsel, who filed a first amended petition. The only issue raised in this petition relating to the jury concerned the "death qualification" of the jury, and the propriety of asking the jury panel whether moral, conscientious, or religious scruples would prevent them from bringing in a sentence of death if the jurors were convinced that such verdict was fair and just. The petition claimed that this denied Blair an impartial jury in violation of the Sixth Amend-

ment and the Fourteenth Amendment's due process clause.[8]

It is evident that neither Blair's pro se petition nor his appointed counsel's amended petition raised a *Swain* issue. After the district court denied Blair's petition for habeas corpus and while Blair's appeal was pending before this court, Blair filed pro se pleadings with this court and the district court, including a motion to this court seeking a remand to the district court so that the district court could consider all claims exhausted in the state court. In his motion to remand filed with this court, Blair urged that his case should be remanded to the district court for consideration of additional claims not presented by his court-appointed habeas counsel. He specifically complained that the State improperly used its jury strikes to remove all blacks from the jury.[9] He also argued that his court-appointed attorney violated his constitutional right to effective assistance of counsel by failing to raise all issues exhausted in state courts.

Blair argues that his appointed counsel abandoned valid claims of constitutional error in raising only five such points in his first habeas petition. He claims that counsel's actions were without his knowledge, consent, or authorization. Blair contends that there can be no abuse of the writ if the first habeas petition is filed without his authorization or consent. Blair particularly relies on *Williams v. Lockhart*, 862 F.2d 155 (8th Cir.1988), and *Simmons v. Lockhart*, 915 F.2d 372 (8th Cir.1990).

In considering Blair's claim that his counsel had omitted the *Swain* claim without his knowledge or consent, the district court held that habeas counsel's actions were

---

7. The other issues specifically pleaded include: the trial court's failure to give a first-degree felony murder instruction; the trial judge's improper discussion with the jury; and, the prosecution's failure to disclose a plea agreement between the State and witness Ernest Jones.

8. Other issues raised include: the Jones plea bargain; the exclusion of Blair's attorney after the two had seen each other in the police station hallway following Blair's arrest; the failure to charge or instruct on first-degree felony murder; and, the prosecutor's closing argument making an overreaching plea for death.

9. Blair does not argue that this motion filed with this court raised a *Swain* claim. Indeed, the alleged violation appears to be a claim based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We could reject Blair's claim on the basis that a *Swain* claim was not presented, or that his pro se motion to remand in this court must be treated as a successive petition and is, therefore, procedurally barred. Nevertheless, we reject Blair's *Swain* claim on the merits. *Infra*, Part IV.

binding on Blair and counsel's actions did not constitute cause under *McCleskey v. Zant*, —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), because counsel's abandonment of the claim did not rise to the level of ineffective assistance of counsel under *Strickland*, 466 U.S. 668, 104 S.Ct. 2052. Slip op. at 10–12. The district court concluded that habeas counsel acted reasonably in abandoning the *Swain* claim, reasoning that the trial occurred several years before the first habeas petition, making it difficult to prove a systematic exclusion of blacks. Slip op. at 11. Further, the district court stated that even if Blair had presented the *Swain* claim in his first petition, the claim was not meritorious. Slip op. at 11. The court observed that the statistics Blair presented to the district court did not exist when Blair filed his first habeas petition in 1985, and even if a new trial were justified, the overwhelming evidence of guilt suggested that Blair would still have been convicted. *Id.* The district court concluded that Blair had not met the *Strickland* standard for demonstrating ineffective assistance of counsel and, therefore, failed to show cause and prejudice. *Id.* at 12. It also concluded that there was no fundamental miscarriage of justice to excuse procedural default. *Id.*

■ We are satisfied that the district court did not err in concluding that habeas counsel was not ineffective in deciding not to raise a *Swain* claim. First, Blair may not establish "cause" based on ineffective assistance of counsel in a federal habeas case. *Murray v. Carrier* limits "cause" to a showing of "some objective factor external to the defense" that impeded counsel's efforts. 477 U.S. at 488, 106 S.Ct. at 2645. Habeas counsel, as agent for the petitioner, cannot be a factor external to the defense. The Supreme Court recently held that ineffective assistance of habeas counsel could not constitute cause, as there was no constitutional right to effective assistance of counsel in habeas cases. *Coleman v. Thompson*, —— U.S. ——, ——, 111 S.Ct. 2546, 2568, 115 L.Ed.2d 640 (1991). Although *Coleman* dealt with the right to counsel in state habeas proceedings, we have applied this principle in federal habeas

proceedings. *See Cornman v. Armontrout*, 959 F.2d 727, 730 (8th Cir.1992); *Rapheld v. Delo*, 940 F.2d 324, 326–27 n. 3 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 984, 117 L.Ed.2d 147 (1992). Furthermore, in our earlier opinion we acknowledged that there is no constitutional right to effective assistance of counsel in a habeas action. *Blair*, 916 F.2d at 1332.

■ Second, the Supreme Court has squarely rejected the argument that appellate counsel has a duty to raise every nonfrivolous issue his client requests:

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.
>
> . . . . .
>
> A brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, "go for the jugular,"—in a verbal mound made up of strong and weak contentions.

*Jones v. Barnes*, 463 U.S. 745, 751–53, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983) (citations omitted).

This court has considered a nearly identical issue in *Horne v. Trickey*, 895 F.2d 497 (8th Cir.1990). In that case, we rejected a claim that appointed appellate counsel was ineffective by failing to brief and argue a claim that was sustainable only under *Swain*, reasoning:

> Counsel evaluated Horne's case in the context of the law as it existed at the time of Horne's appeal and determined that Horne did not have a viable equal protection claim under *Swain*. "To hold that counsel was not ineffective we need not find that he made the best possible choice, but that he made a reasonable one." "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable...." Here, Horne's appellate counsel considered the *Swain* issue and decided not to raise it since the record did not contain sufficient evidence

to support such a claim. His decision not to raise an unwinnable issue in Horne's appeal to the Missouri Court of Appeals does not constitute constitutional ineffectiveness. To the contrary, his winnowing of the issues to eliminate a sure loser is the kind of performance that courts expect from competent counsel.

*Id.* at 499–500 (alteration in original) (citations omitted).

Third, Blair's reliance on *Simmons*, 915 F.2d 372, and *Williams*, 862 F.2d 155, is misplaced. *Simmons* specifically recognizes the difference between claims omitted during the process of selecting the most promising grounds for appeal, and those claims which clearly appear from the transcript. 915 F.2d at 377. The *Swain* issue here is distinguishable from the readily apparent conflict of interest issue in *Simmons*. *See also Simmons*, 915 F.2d at 377 (a conflict-of-interest claim "is the kind of claim that should rarely be abandoned"). Likewise, the reasoning in *Williams* does not apply to the facts in this case because Blair filed a petition for habeas corpus pro se, raising four points and stating that "Movant will also rely upon appointed counsel to properly word and present all claims." In *Williams*, counsel filed a habeas petition without the petitioner's knowledge. 862 F.2d at 159–60. We cannot conclude that habeas counsel was ineffective for failing to raise a *Swain* issue so as to constitute cause under *Murray v. Carrier*, and we need not consider the issue of prejudice.

■ Blair also urges that we can consider his *Swain* claim on the merits under the "fundamental miscarriage of justice" exception enunciated in *Smith v. Murray*, 477 U.S. at 537–38, 106 S.Ct. at 2667–68. For support, Blair points to our recent decision in *Pilchak v. Camper*, 935 F.2d 145 (8th Cir.1991). Here, the district court concluded that there was no fundamental miscarriage of justice and specifically referred to Blair's argument based on *Simmons*. Slip op. at 11–12. *Pilchak* is of no help to Blair. The facts in *Pilchak* are unique— involving a hand-selected jury and appoint-

ed counsel suffering from Alzheimer's disease. 935 F.2d at 146–47.

Finally, Blair argues that he is "probably actually innocent" due to the *Swain* claim. He says that when this claim is combined with the other errors discussed above, he makes a colorable showing of actual innocence. He directs us to a recent district court decision, *Hamilton v. Jones*, 789 F.Supp. 299, 300–01 (E.D.Mo.1992), in which the district court for the Eastern District of Missouri held that a *Batson* violation could be raised in a successive habeas petition. *Id.* at 300–01. In *Hamilton*, the district court granted the writ, concluding that Hamilton established an intervening change in law and a probability of factual innocence. *Id.* at 301. The district court ruled that Hamilton met his burden of showing factual innocence because " 'racial discrimination in the selection of jurors "casts doubt on the integrity of the judicial process" ... and places the fairness of a criminal proceeding in doubt.' " *Id.* (quoting *Powers v. Ohio*, —— U.S. ——, ——, 111 S.Ct. 1364, 1371, 113 L.Ed.2d 411 (1991)).

We have considered, and rejected, Blair's specific arguments earlier in this opinion. Adding all of these alleged errors together does not make a colorable showing of actual innocence. Suffice it to say that under the definition of actual innocence announced in *Sawyer*, —— U.S. ——, 112 S.Ct. 2514, Blair has failed to show by clear and convincing evidence that but for the constitutional errors, no reasonable juror would have found him eligible for the death penalty under applicable state law. *Id.* Indeed, as the Missouri Supreme Court opinion and our first opinion demonstrate, the evidence against Blair was strong. *Blair*, 916 F.2d at 1313–16; *Blair*, 638 S.W.2d at 758–59. The district court also referred to the overwhelming evidence of guilt and of aggravating circumstances. Slip op. at 11, 13, 19, 22. The factual discussion in the opinion of the Missouri Supreme Court and our first decision fully support this conclusion by the district court. Thus, the district court did not err in concluding that Blair's *Swain* claim was procedurally barred.

Although this conclusion is an independent basis for our decision, we are further satisfied that Blair has not established a *Swain* violation. The requirements of *Swain* are best set forth within the language that the Court used in that opinion:

> The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it.

380 U.S. at 222, 85 S.Ct. at 837. The Court explained:

> We have decided that it is permissible to insulate from inquiry the removal of Negroes from a particular jury on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged. But when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance.

*Id.* at 223, 85 S.Ct. at 837. The Court explained further that to establish a *Swain* violation the defendant must "show the prosecutor's systematic use of peremptory challenges against Negroes over a period of time." *Id.* at 227, 85 S.Ct. at 839.

The evidence before the trial court related to two issues: (1) the jury selection in this particular case; and (2) the makeup of the venires from voter registration lists. In Blair's Rule 60(b)(6) motion filed May 13, 1991, Blair alleged that the Jackson County prosecutor's office employed racially discriminatory jury selection practices in Blair's trial and in "case after case" of black criminal defendants. Blair subsequently submitted nine affidavits from criminal defense attorneys who all stated that prior to *Batson,* the prosecutor's office consistently and systematically utilized peremptory challenges to remove African Americans from jury panels. Blair also presented the district court with a transcript of the testimony of several Jackson County criminal defense attorneys who recalled specific cases in which the prosecutor in Blair's trial struck black veniremen. Finally, Blair presented the district court with statistical evidence based on records kept by the Jackson County Public Defender's office during 1985 and 1986 showing that the prosecutor's office used a disproportionate number of peremptory strikes to remove blacks from jury panels in cases involving black defendants. Blair did not offer any of this evidence in his state court proceedings or his first habeas proceedings.

Although the district court held that Blair's *Swain* claim suffered "serious procedural problems," the court considered the merits of the claim. Slip op. at 16. The district court concluded that the 1985 and 1986 statistics were not decisive enough for the district court to disregard the *Swain* presumption that the prosecutor used peremptory challenges to obtain a fair and impartial jury. *Id.* at 18–19. The district court reasoned that *Swain* did not require prosecutors to use peremptory challenges against blacks in a number equal to their proportion of the jury pool. *Id.*

In addition to the procedural barriers preventing us from considering Blair's *Swain* claim, there is yet another obstacle to our consideration of this claim. The Supreme Court recently held that a federal habeas petitioner must fully develop the factual record upon which he relies in his state court proceedings. *Keeney v. Tamayo-Reyes,* —— U.S. ——, —— - ——, 112 S.Ct. 1715, 1719–20, 118 L.Ed.2d 318 (1992). Failure to develop those facts can only be excused on a showing of cause and

prejudice or a fundamental miscarriage of justice. *Id.* —— U.S. at —— – ——, 112 S.Ct. at 1719–21.

Blair did not offer the evidence recounted above in his state court proceedings. He responds that *Keeney* announced a "new rule" within the meaning of *Teague v. Lane*, 489 U.S. 288, 301, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334 (1989) (plurality opinion), and that *Keeney* cannot be retroactively applied to him. We do not read *Teague* to apply here. *Teague* addresses the question of when a petitioner can seek the *benefit* of a "new rule" of criminal procedure. 489 U.S. at 299, 109 S.Ct. at 1068. Blair does not demonstrate cause and prejudice or a fundamental miscarriage of justice.[10] Thus, in light of *Keeney,* we question whether we can now consider the evidence presented in the district court.

Notwithstanding the multitude of procedural and evidentiary problems preventing our consideration of Blair's *Swain* claim, even considering the claim, we cannot conclude that Blair has established a *Swain* violation. The strikes taken in this particular case do not satisfy the prima facie case outlined in *Swain.* Indeed, the Missouri Supreme Court so held in Blair's direct appeal. 638 S.W.2d at 753. We observe that the statistical evidence of the makeup of jury panels and the strikes made by prosecutors occurred during the 1985 and 1986 period. The trial of this case took place in the fall of 1980. The 1985–1986 evidence has no relevance to the earlier period. Even accepting the evidence at face value, we still conclude that the evidence is insufficient to show that the prosecutor in Jackson County in case after case, whatever the circumstances, whatever the crime and whoever the defendant or victim, was responsible for removing African Americans over a period of time. Likewise, several of the affidavits Blair submits do not relate to the time period in question, and the testimony presented in the affidavits and the hearing transcripts do not compel a conclusion that the Jackson County, Missouri prosecutor's office intentionally and systematically removed African Americans from Blair's jury panel or jury panels in Jackson County over a period of time. Most of the affidavits were conclusory and reflected the personal beliefs of former public defenders. Even those affidavits which contained information most strongly suggesting a *Swain* violation, conceded that black veniremen were not challenged when they appeared "pro-prosecution." Thus, Blair's evidence, even if we were to consider it, is insufficient to support relief under *Swain.* As to Blair's arguments concerning the makeup of jury venires as a whole, and whether they are fair and reasonable, these are issues that go more to *Taylor,* 419 U.S. 522, 95 S.Ct. 692, and *Duren,* 439 U.S. 357, 99 S.Ct. 664, but they are of no consequence to *Swain.*

Blair argues that he is particularly disadvantaged in that he is not entitled to the procedures in *Batson.* The Supreme Court, however, has made clear that *Batson* principles will not be retroactively applied to cases pending at that time on collateral review. *Allen v. Hardy,* 478 U.S. 255, 259–61, 106 S.Ct. 2878, 2880–81, 92 L.Ed.2d 199 (1986) (per curiam). Although we agree that this circumstance is disadvantageous to Blair, we still may review this issue only under principles of *Swain.* *Id.*

We affirm the judgment of the district court denying the writ. The stay of execution shall continue until either the time runs for the filing of a petition for writ of certiorari with the United States Supreme Court and such petition is not filed, or if such petition is filed, until final action by the United States Supreme Court.

HEANEY, Senior Circuit Judge, concurring in part and dissenting in part.

Walter Blair's conviction has been tainted by racial prejudice. Blair, a twenty-year-old black man, was charged with murdering a young white woman. Experience indicates that juries are especially likely to impose the death penalty under these cir-

---

**10.** Blair simply makes a general request for a remand to the district court for an attempt to show cause and prejudice or a fundamental miscarriage of justice.

cumstances,[1] so it was essential that the jury be fairly selected. The prosecutor, however, used his peremptory challenges to strike four qualified blacks from the petit jury panel in this racially charged case, leaving an all-white jury and a strong inference of discriminatory purpose. The prosecutor's discriminatory intent was also plain in closing argument when he appealed to the prejudices of this all-white jury by asking them to consider what the "attractive" white victim thought "when she woke up … staring into the muzzle of a gun held by this black man."

In light of the prosecutor's discriminatory behavior, we cannot say that Blair received a fair trial. Moreover, the record reveals that the prosecutor's action in Blair's case was part of a long pattern in Kansas City of striking black jurors in criminal cases with black defendants. Blair has presented more than sufficient evidence to support his claim under *Swain v. Alabama.* Accordingly, I dissent from part IV of the court's opinion.

### *Merits of Blair's Swain Claim*

Under the law of our circuit, a defendant can establish a prima facie case of purposeful discrimination under *Swain* by proving that the prosecutor used his or her peremptory challenges (1) to exclude blacks from the jury for reasons unrelated to the outcome of the particular case on trial, or (2) to deny to blacks the same right and opportunity to participate in the administration of justice enjoyed by the white population.

*Walton v. Caspari,* 916 F.2d 1352, 1360 (8th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1337, 113 L.Ed.2d 268 (1991). One way to do this is to show that "the prosecution has systematically excluded blacks from petit juries over a period of time." *Garrett v. Morris,* 815 F.2d 509, 511 (8th Cir.), *cert. denied,* 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 191 (1987); *United States v. Pollard,* 483 F.2d 929, 930 (8th Cir.1973), *cert. denied,* 414 U.S. 1137, 94 S.Ct. 882, 38 L.Ed.2d 762 (1974). Although a pattern of exclusion over a few weeks might be insufficient, the petitioner "is not required to show that the prosecutor *always* struck *every* black venireman offered to him." *Willis v. Zant,* 720 F.2d 1212, 1220 (11th Cir.1983), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3546, 82 L.Ed.2d 849 (1984). Here, Blair presented the district court with substantial evidence proving that the Jackson County prosecutor's office has, over many years, used its peremptory strikes to systematically exclude black jurors from petit juries in that county. Having proved a prima facie *Swain* violation, Blair is entitled to a new trial regardless of the strength of the state's case.[2]

To prove his *Swain* claim, Blair submitted (1) affidavits from nine attorneys who practiced criminal defense in Jackson County during the 1970s and 1980s; (2) 1985 and 1986 statistics from Jackson County criminal cases regarding the prosecution's use of peremptory challenges against blacks; and (3) sworn testimony from Jackson County criminal defense lawyers regarding

---

**1.** *See McCleskey v. Kemp,* 481 U.S. 279, 286–87, 107 S.Ct. 1756, 1763–64, 95 L.Ed.2d 262 (1987) (study of over 2,000 murder convictions in Georgia shows that the death penalty was assessed in twenty-two percent of the cases involving black defendants and white victims; eight percent of the cases involving white defendants and white victims; three percent of the cases involving white defendants and black victims; and one percent of the cases involving black defendants and black victims).

**2.** The district court found that the "overwhelming evidence of guilt suggested that Blair would still have been convicted." What the district court did not say is whether Blair would have been convicted of felony murder or capital murder. Although there was strong evidence to support a felony murder conviction, the evi-

dence to support a capital murder conviction was significantly weaker. In either event, the district court was incorrect in applying a harmless error analysis. There is *no* requirement of prejudice in a *Swain/Batson* claim: if jury selection procedures violate the equal protection clause, a conviction must be reversed whether the case against the defendant was strong or weak. *See Avery v. Georgia,* 345 U.S. 559, 561, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953) (where jury selection procedures operated to discriminate on racial grounds, thus violating the equal protection clause, the conviction must be reversed "no matter how strong the evidence of petitioner's guilt"); *see also Vasquez v. Hillery,* 474 U.S. 254, 260–61, 106 S.Ct. 617, 621–22, 88 L.Ed.2d 598 (1986) (same rule applied to grand jury proceedings).

specific cases in which the prosecutor in Blair's case, Robert Dakopolis, struck black jurors. In addition, Blair emphasizes that we may infer racially discriminatory intent from the Jackson County prosecutor's remarks during the closing argument in Blair's case.

The strongest evidence in support of Blair's claim is from six of the affidavits of criminal defense lawyers who had practiced in Jackson County before, during, and immediately after Blair's 1980 trial. According to these attorneys, the trial staff of the Jackson County prosecutor's office consistently and systematically used peremptory challenges to exclude as many blacks as possible from petit juries in criminal cases, and did so until *Batson* was announced in 1986. I set forth below the contents of these six affidavits:

• *Charles Rogers affidavit.* Rogers practiced criminal defense in Jackson County from 1976 to 1989. He tried more than 100 felony jury trials during that period against members of the Jackson County prosecuting attorney's staff. According to Rogers, the prosecuting trial staff consistently and systematically used peremptory challenges to exclude as many blacks as possible, especially in cases where the defendant was black and the complaining witness or decedent was of European descent. According to Rogers's personal observation, he believed that the prosecutors' peremptory strikes were based solely on the race of the excluded veniremen. Veniremen of European descent who gave responses less favorable to the prosecution than those given by black veniremen were not peremptorily excluded if blacks remained on the venire. Rogers stated that based on his personal observation in cases where he was defense counsel or an observer, prosecutor Robert Dakopolis was "especially adamant" about using peremptory challenges to exclude black veniremen. Rogers could not recall a single instance where Dakopolis used a peremptory challenge to remove a venireman of European descent while a black remained on the venire.

• *James Fletcher affidavit.* Fletcher, a criminal defense attorney for eighteen years, tried about ninety jury trials against the Jackson County prosecutor's office. Fletcher was assistant public defender in Jackson County from 1974 to mid–1979 and was chief public defender from 1981 through 1984. Based on his personal observation, Fletcher stated that Jackson County prosecutors systematically excluded blacks from petit juries by using peremptory challenges exercised only on the basis of race, particularly when the defendant was black. According to Fletcher, the practice had the appearance of being a policy of the Jackson County prosecutor's office because it happened regardless of which prosecutors were trying the case. *On several occasions, assistant prosecuting attorneys told Fletcher that the reason they struck blacks from jury panels was because they did not want blacks on the juries, particularly when black defendants were charged with committing offenses against whites.* Fletcher tried cases against Robert Dakopolis on numerous occasions. In those trials, Dakopolis used his peremptory challenges to strike as many black members of the jury panel as he could. In his affidavit, Fletcher gave the names of three cases in which this happened.

• *Kevin Locke affidavit.* Locke, an assistant public defender in Jackson County from 1977 to mid–1986, was involved in about forty to forty-five jury trials against the Jackson County prosecutor's office during that time. According to Locke, in virtually every one of these cases, the prosecutors used their peremptory challenges to exclude blacks on the basis of their race. Locke believed the practice was a policy of the office because it happened regardless of who was trying the case.

• *Susan Chapman affidavit.* Chapman was an assistant public defender in Jackson County from mid–1978 through mid–1981, and handled conflict cases for the Jackson County public defender from mid–1981 to 1985. From 1985 through 1987 Chapman tried cases in Jackson

County as a first assistant public defender. Chapman tried many felony cases in Jackson County during this period, and she observed the Jackson County prosecutor's office systematically employ peremptory challenges to exclude blacks from petit jury panels, apparently solely because of their race. According to Chapman, one assistant prosecuting attorney used a racial epithet to describe black veniremen he had challenged.

• *William Lentz affidavit.* Lentz was a criminal defense attorney in Jackson County from 1976 to 1986. During that time Lentz defended about forty jury trials against the Jackson County prosecutor's office. Lentz believed that office systematically excluded blacks from petit juries by using peremptory challenges exercised solely on the basis of race, and that the practice continued until the Supreme Court decided *Batson.* Lentz also believed that the prosecutor's office excluded blacks to facilitate convictions based on racial prejudice and to allow white petit jury members to comfortably express their racial prejudices among themselves.

• *John Kurtz affidavit.* Kurtz was a public defender in Jackson County from 1979 to 1981 and was in private practice doing some criminal work until 1986. Kurtz had approximately ten jury trials against the Jackson County prosecutor's office during that time. According to Kurtz, the Jackson County prosecutor's office, with the exception of Fred Bellemere III, systematically excluded blacks from juries by use of peremptory challenges exercised solely on the basis of their race.

Such evidence cannot be disregarded as weak or irrelevant. Taken together, these affidavits establish a pattern of discriminatory behavior by the Jackson County prosecutor's office during the period when Blair was convicted. Other courts have found similar evidence from as few as three local lawyers sufficient to establish a *Swain* violation. *Love v. Jones*, 923 F.2d 816, 818–20 (11th Cir.1991); *see also Jones v. Davis*, 835 F.2d 835, 838–40 (11th Cir.), *cert. denied*, 486 U.S. 1008, 108 S.Ct. 1735, 100

L.Ed.2d 199 (1988) (evidence from six local lawyers). Nor do our prior cases state that this kind of evidence is insufficient to demonstrate a *Swain* violation. There simply is no basis for the court to dismiss these six affidavits as insufficient to support relief under *Swain.* One is left with the feeling that the court is not prepared to give affidavits from criminal defense lawyers any weight, and that the court would accept nothing less than a sworn statement from Robert Dakopolis admitting that he struck blacks in Blair's case for a discriminatory purpose.

The majority criticizes Blair's other evidence of discrimination, including sworn testimony from the *Antwine* case, statistics concerning the prosecutors' jury strikes in 1985 and 1986, and three additional affidavits. It is true that this evidence relates to prosecutorial behavior after Blair's trial, and thus would not be enough, without more, to support Blair's *Swain* claim. Blair offers this evidence, however, merely as additional support for the very strong prima facie case he established with the six affidavits summarized above.

The sworn testimony from the *Antwine* case included examples from *specific cases* in which Robert Dakopolis used his peremptory challenges to eliminate all or most of the qualified black jurors from the petit jury. For example, in the case of Gary Lovelady, a black defendant, Dakopolis or his assistant used a disproportionate number of their challenges on blacks, striking five of the six qualified blacks remaining in the venire. In the case of Aaron Phillips, a black defendant, Dakopolis or his assistant struck all five qualified blacks from the jury venire. In the case of James McConnell, a white defendant, there were thirty qualified jurors, with each side having nine peremptory strikes. In McConnell's first trial, which ended in a mistrial, Dakopolis or his assistant struck all six qualified blacks from the venire. At McConnell's second trial, Dakopolis struck all three qualified blacks from the venire. These examples give lie to the notion that Dakop-

olis's actions in Blair's case was some kind of aberration.

Blair's statistical proof is from the Jackson County public defender's office. This evidence demonstrates that in cases involving black defendants in 1985, the Jackson County prosecutor's office used over forty-eight percent of its available peremptory challenges to exclude black jurors even though the pool of qualified jurors was only nineteen percent black. Put another way, in cases involving black defendants in 1985, the prosecutor struck more than sixty percent of the qualified black jurors (49 of 78), but only about fifteen percent of the qualified nonblack jurors (48 of 329). The figures were similar for 1986.[3] This evidence, along with the three affidavits covering the period after Blair's trial, further demonstrates the pervasiveness of the prosecutor's discriminatory practices. Any weaknesses in the three affidavits, the statistical proof, and the sworn testimony does not detract from the strength of the six affidavits that describe with particularity the prosecutor's practices during and before the time of Blair's trial.

Finally, the prosecutor's appeals to racial prejudice at closing argument demonstrate his discriminatory intent in Blair's case. I discussed this issue extensively in my previous dissenting opinion. *Blair*, 916 F.2d at 1351–52. I continue to believe that the prosecutor exceeded the bounds of proper advocacy when he asked the all-white jury to consider what the "attractive" white victim thought "when she woke up ... staring into the muzzle of a gun held by this black man." This statement cannot be justified.[4] Race plays a far too influential role in capital sentencing for us to assume that such a blatant appeal to racial prejudice was harmless. Even if the prosecutor's improper appeal to race does not furnish an independent ground for relief, it certainly supports Blair's claim under *Swain*.

### *Procedural Obstacles to* Swain *Claim*

Although the procedural obstacles erected by the Supreme Court in recent years have made it more difficult for petitioners to get a full and fair hearing in federal court, I believe that there are persuasive reasons for disregarding any procedural bars that might apply to Blair's *Swain* claim.

First, Blair has not tried to sandbag the district court and this court with respect to his equal protection claim. Blair tried to raise the equal protection claim and other claims pro se in his original habeas proceeding. He filed pleadings with the district court and this court stating that his appointed counsel had abandoned claims that he wished to raise. If, as the record indicates, Blair's previous appointed counsel filed the first habeas petition without Blair's knowledge, consent, or authorization, the abuse of the writ doctrine is entirely inappropriate. We made precisely this point in *Williams v. Lockhart*, 862 F.2d 155, 160 (8th Cir.1988), where, as here, the petitioner's attorney filed a habeas petition without the petitioner's knowledge, consent, or authorization. Although counsel can be expected to winnow out weaker arguments on appeal, attorney misconduct cannot be considered a "winnowing" decision.[5]

Second, we may consider otherwise procedurally barred petitions if the petitioner can demonstrate a fundamental miscarriage of justice. *Smith v. Murray*, 477

---

**3.** In cases involving black defendants in 1986, the Jackson County prosecutor's office used forty-four percent of its available peremptory challenges to exclude black jurors even though the pool of qualified jurors was only nineteen percent black. The prosecutor struck more than fifty-seven percent of the qualified black jurors (99 of 173), but only about seventeen percent of the qualified nonblack jurors (127 of 732).

**4.** It is argued that Blair's race must have been "obvious to the jury," *see supra* at 1136. This

might be true, but it certainly does not excuse the prosecutor's ugly racial appeal to the jury.

**5.** *See also Blair v. Armontrout*, 916 F.2d at 1335 n. 3 (Heaney, J., dissenting) (Blair requested first habeas counsel to raise all exhausted state claims. Counsel agreed, but did not raise those claims, thus lulling Blair into not presenting the omitted exhausted claims before the district court.)

U.S. 527, 537, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986). Here, the prosecutor's racial discrimination in the selection of jurors, along with his appeals to racial prejudice in closing argument, make it likely that Blair is actually innocent of capital murder. In *Hamilton v. Jones*, 789 F.Supp. 299 (E.D.Mo.1992), Judge Gunn considered the merits of a petitioner's successive petition raising a *Swain* claim because

> there is a probability of petitioner's factual innocence because "racial discrimination in the selection of jurors 'casts doubt on the integrity of the judicial process' ... and places the fairness of a criminal proceeding in doubt."

*Id.* at 301 (quoting *Powers v. Ohio*, — U.S. —, —, 111 S.Ct. 1364, 1371, 113 L.Ed.2d 411 (1991)). Nor is racial discrimination the only shadow over this case: there also was the prosecutor's knowing use of perjured testimony and the trial court's erroneous refusal to instruct the jury on felony murder. *See infra* at n. 6. Under these circumstances, Blair has demonstrated that he probably is innocent of capital murder, and thus is entitled to a full and fair hearing on the merits of his claim.

Finally, I believe that Blair's failure to fully develop the record for his *Swain* claim in state court is excusable. The majority suggests that Blair must demonstrate cause and prejudice for his failure to fully develop the factual record in state court proceedings. *Supra* at 1141–42 (citing *Keeney v. Tamayo–Reyes*, — U.S. —, — – —, 112 S.Ct. 1715, 1719–20, 118 L.Ed.2d 318 (1992)). If this were true, the proper course would be to remand the case so that the district court can consider whether Blair can prove cause and prejudice for this failure. More importantly, the Missouri Supreme Court reached out and decided the *Swain* issue on Blair's direct appeal even though Blair had not raised the issue at that point. The record does demonstrate, therefore, external cause for Blair's failure to develop a *Swain* record in the Missouri courts.

Blair had the choice of raising his *Swain* claim either on direct appeal to the Missouri Supreme Court or in a post-conviction proceeding under Missouri Supreme Court Rule 27.26. *See, e.g., Brown v. State*, 470 S.W.2d 543, 544 (Mo.1971) (*Swain* claim raised in Rule 27.26 motion). There would have been good reason to raise the *Swain* claim in a post-conviction proceeding rather than direct appeal: a *Swain* claim requires exhaustive proof, proof that might not easily be marshalled under the tight deadlines of a direct appeal.

Thus, Blair's attorney omitted the *Swain* claim on direct appeal, arguing only that the method of selecting jury venires in Jackson County from voter registration lists excluded qualified black jurors. The Missouri Supreme Court, however, reached out and decided the *Swain* claim sua sponte. That court's conclusion—that Blair failed to establish the systematic exclusion of blacks through peremptory challenges—was correct only because Blair had not chosen to present evidence of such discrimination on direct appeal. The court's gratuitous action precluded Blair from making any kind of record to support a *Swain* claim in a Missouri post-conviction hearing, because under Missouri law, "a matter decided on direct appeal may not be relitigated in post-conviction relief proceedings." *Schlup v. State*, 758 S.W.2d 715, 716 (Mo.1988) (quoting *Gilmore v. State*, 731 S.W.2d 369, 371 (Mo.App.), *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987)). It would have been futile for Blair to raise his *Swain* claim during post-conviction proceedings, and it is well settled that petitioners need not raise claims when it would be futile to do so. The Missouri Supreme Court's action certainly is an "objective factor external to the defense," thus constituting cause for Blair's failure to develop the record regarding his *Swain* claim in the Missouri courts.

### Other Claims

I concur in the majority's decision to affirm the district court's denial of Blair's other claims, but a few additional words are in order. As the court explains, the panel majority in our previous opinion rejected two of Blair's remaining claims, holding (1) that Blair had failed to prove

that the prosecution knowingly used perjured testimony from Ernest Jones, and that the perjured testimony could have affected the jury's judgment; and (2) that the trial court's failure to instruct the jury on felony murder did not violate the equal protection clause. *Blair v. Armontrout,* 916 F.2d 1310, 1316–20, 1325–30 (8th Cir. 1990). Although I continue to believe that our court wrongly decided these two issues,[6] I do not believe that Blair has presented enough evidence to justify reopening them.

### Conclusion

Although I disagree with the court, I can understand why it has ruled that Blair's *Swain* claim is procedurally barred. The procedural issues in this case are complex and susceptible to more than one interpretation. I cannot understand, however, why the court holds that Blair presented insufficient evidence to support his *Swain* claim. The affidavits of experienced criminal defense attorneys in Jackson County present a picture of systematic racial exclusion condemned by the Supreme Court in *Swain.* Blair's other evidence simply sharpens this picture.

The evidence to convict Blair of capital murder was far from overwhelming; in fact, Blair likely was innocent of that charge. He is entitled to a new trial free of the racial discrimination that the prosecutors deliberately injected into this case.

---

**6.** As I explained in my earlier dissent, there was ample evidence to show that Ernest Jones perjured himself at trial and that the prosecutor deliberately deceived the trial court and the defense to minimize the impeachment of Jones. We should have remanded the case to the district court to consider the materiality of the state's knowing use of perjured testimony. *Blair,* 916 F.2d at 1335–41 (Heaney, J., dissenting). Moreover, the Missouri trial court's failure to give a felony murder instruction violated Blair's right to both equal protection and due process. *Id.* at 1341–47. Certainly there was

sufficient evidence to support a first-degree murder instruction in Blair's case, and the Missouri Supreme Court inconsistently applied its own precedent when it held that first-degree murder was not a lesser included offense of capital murder when Blair was tried. As Justice Welliver of that court noted on this issue, the Missouri Supreme Court "treated similarly situated defendants differently in a transparent effort to avoid giving them new trials." *State v. Holland,* 653 S.W.2d 670, 680 (Mo.1983) (Welliver, J., dissenting).