STATE of Missouri, Respondent,

v.

Stuart C. GREBING, Appellant.

No. WD 40984.

Missouri Court of Appeals,
Western District.

April 17, 1990.

John A. Klosterman, Asst. Public Defender, Columbia, for appellant.

William L. Webster, Atty. Gen., M. Melissa Manda, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, C.J., FENNER, J., and WASSERSTROM, Senior Judge.

FENNER, Judge.

Stuart C. Grebing, in a consolidated appeal, challenges his convictions for first degree murder and kidnapping and the denial of his Rule 29.15 motion alleging ineffective assistance of counsel.

The evidence adduced at trial and viewed in the light most favorable to the verdict is as follows: On July 8, 1987, Grebing and his girlfriend, Sally Catron, went to a house in Jefferson City belonging to Wilma Hedrick. Hedrick's residence was known as a party house as many people who visited the residence used drugs, including Grebing, Sally Catron, Don Cox, Wilma Hedrick and the victim, John Allen. John Allen was a frequent visitor at the Hedrick residence and was said to be the boyfriend of Wilma Hedrick. Other members of the group were of the impression that John Allen was taking money from Hedrick and was over-injecting her with drugs.

When Grebing and Catron arrived at the Hedrick residence, in the early afternoon of July 8, 1987, it was determined that an ounce of cocaine was missing. At this time Allen was asleep in his car which was parked in the Hedrick driveway. Ms. Hedrick was asleep in the upstairs of her home and her son, Vance, was asleep downstairs. Grebing told Catron that he was going to try to get money and drugs from Allen that allegedly had been stolen from Ms. Hedrick. Grebing asked Vance Hedrick if he wanted to help get Wilma's money and Vance said he did not. Grebing asked

Vance if he wanted to "waste" Allen and Vance responded in the negative, but said, "Why don't you go ask Don", referring to Don Cox. Cox agreed to help Grebing get Wilman Hedrick's money and "scare" John Allen. Cox said he would drive the car.

Grebing retrieved a weapon from the trunk of his car. Grebing and Cox awoke John Allen, forced Allen from his car by pointing a gun to his head and made Allen get into the back seat of Wilma Hedrick's car. Grebing, who was holding the gun, got into the back seat with Allen. The three men left and later Grebing and Cox returned without Allen.

When Cox and Grebing returned, about an hour later, Sally Catron asked as to the whereabouts of Allen. Cox initially responded "dead", but then said, "No, we just shot him in the foot." Cox also told Vance Hedrick that they had shot Allen in the foot. Grebing later said to Sally Catron that he didn't want to talk about it and to shut up about it.

Grebing and Cox then went out to Allen's car to search for the money or cocaine which was missing. They took Allen's car away and the car was later found on Highway 34 south of Jefferson City.

Wilma Hedrick looked through Allen's belongings in the house. Sally Catron and Grebing took some items that belonged to Allen and threw them in a trash can at a park. A few days later Grebing put his gun in the trunk of Catron's car. Catron and Grebing spent a few days at various person's homes. The two then returned to Grebing's apartment where the police arrested Grebing.

On July 11, 1987, John Allen's body was found lying in tall weeds in an isolated area of Cole County. When Allen was discovered, his front pockets had been turned inside out. Following an autopsy, it was determined that Allen died of a gunshot wound to the head. He had been dead for at least 36 to 48 hours before the body was found. Bullet fragments recovered from the body were identified as having been fired from a Smith and Wesson .44 Magnum revolver.

Following Grebing's arrest, the police search of his car revealed two speedloaders and .44 Magnum semi-jacketed hollow point ammunition. The police investigation also turned up 15 to 20 boxes of empty shell casings in Grebing's closet at his apartment. Grebing's gun, recovered from Sally Catron's car, was a Smith and Wesson .44 Magnum revolver.

Grebing did not present any evidence at trial. Following closing arguments by the state and defense counsel, the case was submitted to the jury which returned verdicts of guilty of first degree murder and kidnapping. The jury assessed punishment at life imprisonment without the possibility of probation or parole for the murder charge and fifteen years' imprisonment for kidnapping. Grebing's first two points on appeal challenge these convictions.

In point I, Grebing alleges that the trial court erred in allowing Sally Catron and Vance Hedrick to testify, over objection, to hearsay statements made by Don Cox, a third party defendant, who was not available to testify at trial. Donald Cox, a co-defendant, was tried separately. Grebing claims that admission of the hearsay statements about his participation in the homicide violated the rule against hearsay evidence as well as his right to confront witnesses against him, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. This is so, Grebing complains, because the state presented no independent evidence to establish the existence of a conspiracy which would have provided an exception to the hearsay rule.

The complained of testimony of Catron and Vance Hedrick regards what Don Cox told Catron and Vance when they returned to the Hedrick residence without Allen. As previously stated, when Catron asked where Allen was, Cox responded initially by saying "dead" but then said, "No, we just shot him in the foot." Cox also told Vance Hedrick that they had shot Allen in the foot.

The statement of a conspirator is admissible against another under the co-conspira-

tor exception to the hearsay rule. *State v. Pizzella*, 723 S.W.2d 384, 389 (Mo. banc 1987). A conspiracy may be established through circumstantial evidence. *Id.* The appearance of 'acting in concert' can provide sufficient circumstantial evidence of the existence of a conspiracy so as to allow for the application of the co-conspirator exception to the hearsay rule. *Id.* at 389 (citations omitted). In order for the state to establish that the out of court statements of a co-conspirator are admissible, independent evidence of the conspiracy must be presented to show that the declarant made the statement in furtherance of the conspiracy and while the unlawful purpose continues to exist. *State v. Leisure*, 772 S.W.2d 674, 681 (Mo.App.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 724, 107 L.Ed.2d 743 (1990). When a conspiracy continues for any purpose, such as the concealing of a crime, or taking measures to defeat prosecution, the declarations of a co-conspirator are admissible. *State v. Clevenger*, 733 S.W.2d 782, 784–85 (Mo.App. 1987).

■ The record reveals that a conspiracy existed between Grebing and Cox. The men discussed recovering money and drugs from Allen by scaring him. Cox agreed to drive the car. Both men forced Allen out of his car at gunpoint and made him get into the back seat of Wilma Hedrick's car. Grebing got into the back seat with Allen and held a gun to Allen's head while Cox drove the car away.

When the men returned without Allen, Cox initially responded that Allen was "dead", but then explained Allen was shot in the foot. The subsequent explanation by Cox to Catron and Vance Hedrick concerning Allen's whereabouts represents an attempt to conceal the actual crime. In addition, the unlawful purpose continued after Cox's statements were made as both men worked to dispose of Allen's possessions.

There being a conspiracy established, the admitted statements came within the co-conspirator exception to the hearsay rule. Point I is denied.

■ In Point II, Grebing challenges the sufficiency of the evidence to convict him of first degree murder. He alleges that the state failed to prove each and every element of the crime in that the evidence failed to prove he knowingly caused the death of Allen after deliberation on the matter.

In reviewing the sufficiency of the evidence this court considers facts and all favorable inferences to be drawn from them in the light most favorable to the state and rejects all contrary evidence and inferences. *State v. Picone*, 760 S.W.2d 471, 473 (Mo.App.1988). When a case is founded on circumstantial evidence, the facts must be consistent with each other and with the hypothesis of guilt; they must be inconsistent with innocence, and they must preclude a reasonable hypothesis of innocence. *State v. Coons*, 743 S.W.2d 112, 114 (Mo.App.1988). However, the circumstances need not be absolutely conclusive of guilt and they need not demonstrate the impossibility of innocence. *See, State v. Biddle*, 599 S.W.2d 182, 192 (Mo. banc 1980) (citation omitted).

As noted by the state, Grebing was charged and found guilty under a theory of accomplice liability. In order to convict Grebing as an accomplice to first degree murder, it was necessary that the state prove Grebing aided in the murder with the purpose of promoting the commission of that offense. *State v. Roberts*, 709 S.W.2d 857, 861 (Mo. banc 1986), *cert. denied*, 479 U.S. 946, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986).

The jury found Grebing guilty of the charges against him. It is not the function of this court to weigh the evidence, but to assess whether that evidence was sufficient for reasonable persons to have found Grebing guilty. *State v. McCuin*, 731 S.W.2d 305, 307 (Mo.App.1987).

In this case, the evidence presented to the jury, as previously set forth, was sufficient for a finding of guilty. It is not necessary to offer a lengthy reiteration of the evidence at this point. Suffice it to say

that originally Grebing asked Vance Hedrick if Vance would help him "waste" Allen. When Vance declined the offer, Grebing asked Cox to help get Wilma Hedrick's money back and the two agreed to "scare" Allen. Grebing then retrieved his gun from his car trunk. Grebing ordered Allen out of Allen's car at gunpoint. Grebing and Cox then ordered Allen into the back seat of another car. All three departed and only Grebing and Cox returned. When asked about Allen's whereabouts, Cox originally responded "dead". Allen was found dead as a result of a gunshot wound to the head. It was determined that the bullet fragments were fired from a .44 Magnum Smith and Wesson revolver, the type owned by Grebing. Grebing also aided in disposing of Allen's belongings, including Allen's car which was driven away by Grebing. Grebing hid his gun in Sally Catron's car and he and Catron absconded from the town for a few days before returning to his apartment.

The evidence presented by the state was undeniably sufficient to enable reasonable persons to find Grebing guilty. For that reason, Point II is denied.

In his third and final point Grebing alleges that the motion court erred in denying his Rule 29.15 motion for post-conviction relief. Grebing also alleges as error the denial of his motion to dismiss counsel in that his motion counsel had not complied with the mandatory provisions of Rule 29.-15(e), which provides, in pertinent part, as follows:

> When an indigent movant files a pro se motion, the court shall cause counsel to be appointed for the movant. Counsel shall ascertain whether sufficient facts supporting the grounds are asserted in the motion and whether the movant has included all grounds known to him as a basis for attacking the judgment and sentence. If the motion does not assert sufficient facts or include all grounds known to the movant, counsel shall file an amended motion that sufficiently alleges the additional facts and grounds.

On April 10, 1989, Grebing filed a *pro se* motion to dismiss his appointed counsel. The motion alleged that his counsel had failed to advise him in accordance with Rule 29.15(e). The motion court denied the motion to dismiss counsel, but the subject arose at the evidentiary hearing on May 12, 1989. At that time, Grebing's counsel told the court that he had written to Grebing to obtain additional information on the grounds for post-conviction relief and had also reviewed the court files, but Grebing had not informed him of additional grounds nor did a review of the record yield any grounds. The motion court refused to allow Grebing to amend the post-conviction motion, but gave him the opportunity to state on the record any additional grounds. Because Grebing stated that his legal file had not been available to him at the correctional facility, the motion court continued the evidentiary hearing to May 24, 1989.

At the hearing on May 24, 1989, Grebing presented eight grounds not previously raised in his *pro se* motion that he alleged should have been included in an amended motion. He was permitted to testify as to each of the additional grounds.

The motion court denied Grebing's motion on July 6, 1989, and entered findings of fact and conclusions of law.

On appeal Grebing specifically complains that his appointed motion counsel did not obtain the necessary information to amend his *pro se* motion, did not raise additional grounds to challenge his conviction and did not amend the motion at all.

■ An appeal from a post-conviction proceeding is directed to the validity of an appellant's conviction and sentence and generally cannot be used as a conduit to challenge the effectiveness of counsel in the post-conviction proceeding. *Young v. State*, 770 S.W.2d 243, 245 (Mo. banc 1989). Review has been granted under the very limited circumstance where the motion counsel's conduct is challenged as a violation of the rule and the motion was summarily dismissed without a hearing for pro-

cedural shortcomings. *Jones v. State*, 702 S.W.2d 557 (Mo.App.1985). Further, warrant for the extraordinary relief of reversal for appointed motion counsel's failure to amend does not arise unless the record indicates that the movant had a justiciable claim that appointed counsel failed to present. *State v. Perez*, 768 S.W.2d 224, 228 (Mo.App.1989).

■ A review of the record indicates that Grebing's motion counsel reasonably sought to ascertain additional grounds for post-conviction relief. There is no indication that Grebing had a justiciable claim that his appointed counsel failed to present. The denial of Grebing's post-conviction relief is affirmed.

The judgments of the trial court and motion court are affirmed.

All concur.