**STATE of Missouri, Respondent,**

v.

**Ervell HOOVER, Appellant.**

**No. ED 87068.**

Missouri Court of Appeals,
Eastern District,
Division Five.

March 20, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 23, 2007.

Michael A. Gross, St. Louis, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Ervell Hoover (Defendant) appeals from the judgment entered by the Circuit Court of St. Louis County upon his conviction by a jury of second degree murder and armed criminal action. The trial court sentenced Defendant to concurrent terms of ten years' imprisonment for second degree murder and three years' imprisonment for armed criminal action. We reverse and remand.

### Statement of Facts and Proceedings Below

Defendant does not challenge the sufficiency of the evidence to support his conviction. The facts in the light most favorable to the verdict are as follows: Defendant was the father-in-law of the victim, Jeffery Sexton. Defendant's daughter Lois Sexton was married to

Mr. Sexton for twelve years. Mr. Sexton had a long history of physically and verbally abusing his wife and of drug abuse. On December 14, 2002, after a prolonged and brutal episode of physical abuse during which Mr. Sexton threatened to kill Ms. Sexton, she left Mr. Sexton. Robert Hoover, Ms. Sexton's brother, transported Ms. Sexton and her daughter to the airport and they flew to North Carolina, where two of Ms. Sexton's sisters, Lisa and Lorraine, were living. Dennis Irby is married to Lorraine.

Dennis Irby came to St. Louis and stayed with Defendant from December 19 until December 23, 2002. Mr. Irby asked Defendant for a rifle. Defendant gave Mr. Irby a .22 rifle, knowing that it was going to be used to kill Mr. Sexton. Defendant also moved Ms. Sexton's car to a parking lot, knowing that Mr. Irby intended to use Ms. Sexton's car to travel to Mr. Sexton's home to kill Mr. Sexton.

On December 31, 2002, Mr. Sexton's father went to Mr. Sexton's home and found him shot to death. Police arrested Dennis Irby, Robert Hoover and Defendant for the killing of Mr. Sexton.

On January 3, 2003, a grand jury charged Defendant, Robert Hoover, and Dennis Irby with first degree murder and armed criminal action in connection with Mr. Sexton's death. The indictment alleged that the three had acted together to kill Mr. Sexton.

On July 11, 2005, the first day of Defendant's trial, the State filed an information in lieu of the indictment that replaced the charge of first degree murder with second degree murder. The information repeated the allegation that Defendant had acted together with Robert Hoover and Dennis Irby to cause Mr. Sexton's death. On July 12, 2005, the State filed an amended information which substituted "acting with Robert Hoover and Dennis Irby" with "acting with others."

On July 18, 2005, a jury found Defendant guilty of second degree murder and armed criminal action. On September 29, 2005, the trial court sentenced Defendant to concurrent terms of ten years' imprisonment for second degree murder and three years' imprisonment for armed criminal action. Defendant appeals.

### *Discussion*

■ Defendant contends the trial court erred by granting the State leave to amend the information to charge Defendant with acting with "others" rather than acting specifically with Robert Hoover and Dennis Irby. More specifically, Defendant asserts the amended information eliminated a viable defense and deprived him of a fair opportunity to prepare for trial.

■ We review a trial court's order granting leave to file an amended information for abuse of discretion. *State v. Folson*, 197 S.W.3d 658, 661 (Mo.App. W.D. 2006). An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to indicate a lack of careful consideration. *State v. Forrest*, 183 S.W.3d 218, 223–24 (Mo. banc 2006).

■ An information may be amended at any time before a verdict if no additional or different offense is charged and a defendant's substantial rights are not prejudiced. Rule 23.08; *State v. Fitzpatrick*, 193 S.W.3d 280, 284 (Mo.App. W.D.2006). The test for prejudice is whether the planned defense to the original charge would still be available after the amendment, and whether the defendant's evidence would be applicable before and after the amendment. *Id.*

Here, Defendant does not claim the charge set forth in the amended information was inherently improper or prejudicial. Rather, Defendant claims he was prejudiced because of the timing of the amendment. That is, Defendant prepared for months to defend against the charge that he aided or encouraged Robert Hoover or Dennis Irby to shoot Mr. Sexton and then on the day of trial was forced to defend against the charge that he aided Dennis Irby or *"anyone else"* in the murder.

Changing the identity of those with whom Defendant was charged with acting did not constitute charging of a new or different offense. *See State v. West*, 484 S.W.2d 191, 195 (Mo.1972) (amendment of information to add accessory language— "acting alone or in concert with others"— did not constitute new offense or prejudice defendant.) *See also State v. Boone Ret. Ctr., Inc.*, 26 S.W.3d 265, 270 (Mo.App. W.D.2000). After the amendment, Defendant remained charged with second degree murder and armed criminal action in connection with Mr. Sexton's death. Regardless of the amendment, to obtain Defendant's conviction, the State had to prove beyond a reasonable doubt that Defendant was involved in the killing of Jeffrey Sexton. Defendant's defense was that he was not involved in the killing of Mr. Sexton, did not confess and did not know who killed Jeffrey Sexton. This defense was equally applicable to the charge whether Defendant was charged with acting with others or acting with Robert Hoover and Dennis Irby. Point denied.

■ In his second point, Defendant contends the trial court erred in denying Defendant's motion for a bill of particulars after the State was granted leave to file its first amended information. Defendant claims the amended charge altered the State's theory of the case and deprived Defendant of the opportunity to investigate and prepare a defense to the State's new theory.

■ The function of a bill of particulars is to clarify the charging document. *State v. Larson*, 941 S.W.2d 847, 851 (Mo. App. W.D.1997). The bill of particulars enables the accused to prepare for trial, prevents surprise, and restricts the state to matters set forth in the bill. *State v. Cunningham*, 863 S.W.2d 914, 919 (Mo. App. E.D.1993). We will not disturb a trial court's denial of a motion for a bill of particulars absent an abuse of discretion. *State v. Larson*, 941 S.W.2d 847, 851 (Mo. App. W.D.1997). To demonstrate an abuse of discretion, the defendant must show that lack of necessary factual details prevented an adequate preparation of a defense. *Id.* Even if the trial court abuses its discretion, the defendant also must establish he was prejudiced. *State v. Sprinkle*, 122 S.W.3d 652, 658 (Mo.App. W.D. 2003).

Here, Defendant filed a motion for a bill of particulars following the State's filing, on the first day of trial, of an information in lieu of indictment that reduced the charge of first degree murder to second degree murder. The trial court denied the motion. On the second day of trial, after the State filed the amended information substituting "acting with others" for "acting with Robert Hoover and Dennis Irby," Defendant stated to the court, "The bill of particulars needs to be answered." The court responded, "I'll deny your motion."

Assuming, *arguendo*, that counsel's statement to the trial court constitutes a renewal of his motion for a bill of particulars, we find the trial court did not abuse its discretion and Defendant was not prejudiced.

The State charged Defendant on March 5, 2003 with one count of first degree

murder and one count of armed criminal action. Defendant did not seek clarification of the charging document until July 8, 2005, following the State's reduction of the first degree murder count to second degree murder. Defendant had over two years in which to file a motion for a bill of particulars and to conduct discovery to clarify the nature of his alleged involvement. It is a rare case, and we do not believe this is one, in which the discovery tools available are not sufficient to pinpoint the offense and prepare an adequate defense. *See State v. Weiler*, 801 S.W.2d 417, 420 (Mo.App. W.D.1990).

Additionally, as noted above, the amended information did not constitute the charging of a new or different offense and Defendant's defense was that he was not involved in the killing of Mr. Sexton, did not confess, and did not know who killed Jeffrey Sexton. Accordingly, we do not find Defendant was prejudiced. Point denied.

■■■ In his third point, Defendant contends the trial court erred in overruling his objections to the State's references to Robert Hoover's statements to the police during: (1) the State's opening statement, and (2) the testimony of Officers Carroll, Lowery, and Banta. Specifically, Defendant argues that any reference to the "fact and content" of Robert Hoover's statements was hearsay and prejudicial to Defendant. In addition, Defendant asserts that admission of Robert Hoover's state-

ments incriminating Defendant violated Defendant's Sixth Amendment right to cross-examine and confront adverse witnesses. The State responds that it did not introduce Robert Hoover's confession, but merely offered evidence that the police officers told Defendant that Robert Hoover confessed to the crime and implicated Defendant. The State has not responded to the Defendant's contention that the introduction of Robert Hoover's statements to the police prejudiced Defendant. Nor does the State address the alleged violation of Defendant's Sixth Amendment rights.[1]

■■■ We review a trial court's ruling on an objection to remarks made in an opening statement for abuse of discretion. *State v. Thompson*, 68 S.W.3d 393, 395 (Mo. banc 2002). We will reverse only if it is probable that the improper comments had a substantial effect on the judgment. *Id.* Trial courts have broad discretion to admit or exclude evidence at trial. *State v. Forrest*, 183 S.W.3d at 223. We will reverse a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion. *Id.* A trial court abuses its discretion when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. *Id.* When the prejudice resulting from the improper admission of evidence is outcome-determina-

---

1. Because neither party addresses the alleged Sixth Amendment violation in the argument section of the briefs, we decline to address it as well. Nevertheless, we note that our Supreme Court has recently held that "[w]here testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *State v. Kemp*, 212 S.W.3d 135, 150 (Mo. banc 2007). Statements taken by police officers in the course of interrogations, except where cir-

cumstances indicate the primary purpose of the interrogation is to enable police to meet an ongoing emergency, are testimonial. *Id.* at 148. (citations omitted). Under *Kemp*, Robert Hoover's statements to the police are unquestionably testimonial. In addition, Robert Hoover was not available at trial and there is no record evidence suggesting that Defendant had a prior opportunity to cross-examine Robert Hoover regarding the statements at issue.

tive, reversal is required. *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000).

■■■■■ "A hearsay statement is an out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value."[2] (citation omitted). *State v. Kemp*, 212 S.W.3d at 146. When the testimony of an in-court witness about another's statement is offered to explain the conduct of the witness who is testifying rather than as proof of the facts asserted in the statement, the testimony does not constitute hearsay. *State v. McCann*, 792 S.W.2d 890, 893 (Mo.App. E.D.1990); *See also State v. Barnes*, 345 S.W.2d 130, 132 (Mo.1961) (testimony as to a statement tending to explain subsequent conduct of the testifying witness is admissible); *State v. Brooks*, 618 S.W.2d 22, 25 (Mo. banc 1981) (police officer's testimony of informant's observation properly offered to show police officer's conduct); *But see*

*State v. Shigemura*, 680 S.W.2d 256, 257 (Mo.App. E.D.1984) (court rejects state's position that statement was offered merely to explain subsequent police conduct and not for its truth where statement connected defendant directly to the crime); *State v. Douglas*, 131 S.W.3d 818, 824 (Mo.App. W.D.2004) (out-of-court statements that go beyond what is necessary to explain subsequent police conduct are hearsay).[3]

As an initial matter, prior to trial, the trial court considered Defendant's motion *in limine* to exclude introduction of Robert Hoover's statements to the police. During the discussion with the trial court, the State conceded that the "only way any prior statements from the two [Robert Hoover and Dennis Irby] come in if it's while they're on the stand...." Because the State believed that Robert Hoover would not testify at trial, the prosecutor advised the trial court that Robert Hoover's "prior recorded statements will not be admissible" and the State "cannot put

**2.** The concurring opinion argues that Robert Hoover's statements were offered only to prove the fact that they were made rather than for their truth and thus were offered for a non-hearsay purpose. However, it is clear that the significance of the statements does not lie solely in the fact that they were made. *See* Advisory Committee Notes to Federal Rules of Evidence 801(c). That is, their "truth value" was unquestionably relevant. The State was required to prove that Defendant aided or encouraged Dennis Irby or another person in committing the murder of Jeffrey Sexton. Quite obviously, an officer's statement, for instance, that "Robert confessed to the killing ... and that he implicated [Defendant] and Dennis Irby as being part of the plot," goes directly to the central issue in the trial.

**3.** The concurrence cites *Wigmore* in support of the proposition that an utterance offered to prove the state of mind of another is not hearsay, and presumably, as grounds for admission of Robert Hoover's statement on the basis that it demonstrated a police "interrogation technique." In the nearly one hundred

cases listed in the footnote to the cited *Wigmore* section, not one appears to permit a co-defendant to directly implicate a defendant in a crime through police officer testimony whether as an explanation of an "interrogation technique" or otherwise. More to the point, Missouri courts have clearly heeded the warning in *McCormick on Evidence* § 249 that the principle articulated in *Wigmore* may be abused when a declarant's statement is offered through a police officer to explain subsequent conduct. *See also* Graham, *Handbook of Federal Evidence* § 801:5 (6th ed.2006) (noting that where statement is offered to show "effect on listener," "if [police officer] becomes more specific by repeating definite complaints of a particular crime by the accused, this is so likely to be misused by the jury as evidence of the fact asserted that the content of the statement should, absent special circumstances enhancing probative value, be excluded....") In addition, Missouri courts have not automatically accepted the state's assertion that a given statement is not offered for its truth and simply permitted therefore, the admission of a statement that directly implicates the defendant in the crime.

on these prior statements."[4] Nevertheless, the trial court denied Defendant's motion in limine.

During the opening statement, the State repeatedly referred to Robert Hoover's statements to the police. The first reference occurred as the prosecutor described the interrogation of Defendant:

> They tell him things that they say Rob told him. They tell him that Rob implicated him. That Rob said he was involved in the planning of the killing.

Following Defendant's objection, the State explained to the jury that the police were using an "interrogation technique" and "[w]hether Rob actually said these things to the police or not is not the point here." The State further elaborated, describing "the point" as follows:

> What is the point is that the police tell this to the defendant, they tell him that Rob has implicated him being involved in this plot to kill Jeff. That they moved the car together, the police tell them that Rob has implicated them that Rob said they moved the car together....

Following these comments, defense counsel lodged another objection to the State's description of Robert Hoover's statements to the police. The trial court again overruled the objection and the State continued, as follows:

> They tell him that Rob told them that Lois' car was moved to the Des Peres Schnucks parking lot, and this was so Dennis could then come in and get into a Missouri plated car and do the murder with a Missouri plated car in the neighborhood, so as to not arouse suspicion being in a North Carolina plated car.

> They tell him that they know about that car being moved, and they also tell him that *Rob said his dad gave a .22, or gave the gun to Dennis Irby the week earlier when Dennis Irby had been in town.*

(emphasis added).

A further defense objection prompted another explanation to the jury: "Now, this is what the police tell the defendant Rob said. I'm not purporting to say that Rob told the police this. I covered this a moment ago when I talked about interview techniques."

In addition to the State's references to Robert Hoover's statements to the police in the opening statement, the State introduced the trial testimony of James Carroll, the Chesterfield police detective who interrogated Defendant. Detective Carroll stated that during his questioning of Defendant "I basically told him that his son [Robert Hoover] was in the station confessing their involvement." After the trial court overruled Defendant's objection, Detective Carroll again testified: "I told him that his son was in the station confessing their involvement in the Jeffrey Sexton murder."

The State also called Major Lowery, of the Florissant police, to discuss his involvement in Defendant's questioning. Major Lowery described the purpose of his involvement as follows: "Because I was going to instruct Mr. Hoover that I had information about a statement of his son...." Following the defense objection to Major Lowery's testimony and the trial court's overruling of the objection, Major

---

4. The prosecutor's statements to the trial court were as follows:

> So I don't expect that Irby or Rob Hoover is actually going to be taking the stand, so their prior recorded statements will not be admissible, or prior statements made to police officers are not going to be admissible as prior inconsistent statements, because there will be no inconsistent statements to rebut. So I agree I cannot put on those prior statements.

Lowery testified that: "I told him that his son, Robert, had confessed to the killing and that .... that his son, Robert, had confessed fully to the killing, and that he implicated himself and Dennis Irby being part of the plot." [5]

The State concedes on appeal that Robert Hoover's statements to police implicating Defendant were hearsay and inadmissible against Defendant at trial. The State, however, asserts that the challenged evidence does not constitute the impermissible introduction of Robert Hoover's statements to police:

> No testimony was admitted that Robert had, in fact, confessed to the crime and implicated appellant. Rather, the only evidence that was adduced was that the police told appellant that Robert had confessed as a way to convince appellant to tell his side of the story. As Robert's confession was not admitted, the trial court did not abuse its discretion in overruling appellant's objection.

In essence, the State asserts that the challenged evidence was merely offered as a description of an "interrogation technique."

The State has not cited any cases in support of the proposition that the introduction of an accomplice's statement to police directly implicating a defendant is permissible if the statement was used as an "interrogation technique" to elicit a confession.[6] In our review of Missouri case law, we have found that *State v. Cook*, 628 S.W.2d 657 (Mo. banc 1982) provides helpful guidance. In *Cook*, the defendant challenged the following police officer testimony as hearsay:

> After he denied any involvement in the robbery, I advised him that we had received information, and he was involved in the robbery, and that his picture had been picked out by the two witnesses as a suspect who had committed the robbery.

628 S.W.2d at 659.

In response, the state argued that the officer's testimony was not offered for its truth "but only to show that the statement was made by the officer (whether true or false) in order to show the state of mind of the appellant and consequently why appellant confessed...." *Id.* In rejecting the state's argument as the basis for admission of the police officer testimony, the Court stated:

> The evidence of extrajudicial identification by others would always be admissible on the proffered basis. All that would be required is that the officers said it to the prisoner prior to a confession. The damage is done whether the hearsay be true or false. One might say

---

**5.** The concurrence describes the police officers' testimony as not resulting in the admission of "unnecessary details of Robert Hoover's confessions." However, the concurrence does not dispute that the record establishes that police officers testified repeatedly that Robert Hoover confessed his own involvement in the murder and directly implicated Defendant in the murder.

**6.** We note that in *Davis v. Washington,* the U.S. Supreme Court commented on the relationship between police conduct of investigations and the Confrontation Clause of the Sixth Amendment: "The Confrontation Clause in no way governs police conduct, because it is the trial *use* of, not the investigatory *collection* of, *ex parte* testimonial statements which offends that provision. But neither can police conduct govern the Confrontation Clause; testimonial statements are what they are." (emphasis in original). *Davis v. Washington,* —— U.S. ——, 126 S.Ct. 2266, 2279 fn. 6, 165 L.Ed.2d 224 (2006). In short, simply because the police successfully used an appropriate interrogation technique to obtain an inculpatory statement does not vitiate possible Confrontation Clause problems once the prosecution seeks to use the statement at trial.

that a defendant's state of mind at the time he gives a confession is always important as it related to voluntariness. That umbrella, however, cannot be allowed to become the excuse to get into evidence hearsay testimony which is otherwise inadmissible. The predictable prejudicial effect far outweighs the supposed relevancy of an accused's state of mind.

*Id.* at 656–60. Accordingly, the Court held that the challenged testimony was hearsay and not admissible. *Id.* at 661.[7]

The recent case of *State v. Edwards*, 116 S.W.3d 511 (Mo. banc 2003) is also instructive. The defendant in *Edwards* was charged with murder. *Id.* at 522. Ortell Wilson told the police where to find the murder weapon and implicated defendant in the murder. *Id.* The police interrogated the defendant and told him that Mr. Wilson was in custody and had spoken with them and they had recovered the murder weapon. At some point, the defendant agreed to give oral and written statements in which he confessed to hiring someone to kill the victim. On appeal, the defendant challenged the admission of Mr. Wilson's statements to the police.

Preliminarily, the Court stated that:

Because Mr. Wilson did not testify, police were unable to introduce evidence of Mr. Wilson's statements about [defendant's] involvement in the crime for their truth. To do so would not merely introduce hearsay; it would violate [defendant's] right to confront his accusers, a right protected by the Confrontation Clause of the United States and Missouri constitution. *See* e.g. *Bruton v. United States*, 391 U.S. 123, 135–37, 88 S.Ct. 1620, 20 L.Ed.2d 476; *State v. Debler*, 856 S.W.2d 641, 648 (Mo. banc 1993).

*Id.* The Court approvingly noted that the trial court, "cognizant of the above principles, did not permit introduction of any of Mr. Wilson's statements for their truth, and *none of his statements implicating defendant in the crime were admitted at all.*" (emphasis supplied). *Id.*

The *Edwards* prosecutor, however, argued at trial that he needed to introduce some evidence explaining why the officers "for instance, went to the deserted house where they found the murder weapon." *Id.* The trial court permitted use of some statements from Mr. Wilson "for this limited type of purpose." *Id.* On appeal, the defendant argued that the limited evidence the trial court admitted was not necessary to explain conduct and the limitation on use was not effective. *Id.* The defendant also argued, as Defendant does here, that "the state purposely used the evidence as a way to circumvent the Confrontation Clause and present evidence that Mr. Wil-

---

**7.** We note that *Cook* relies in large part on *State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972) which prohibited the admission of a witness' extrajudicial identification through a testifying police officer. In *State v. Harris*, the Supreme Court considered the vitality of the *Degraffenreid* rule and restricted its reach. 711 S.W.2d 881, 884 (Mo. banc 1986). More specifically, the Court concluded that, to the extent that the *Degraffenreid* rule distinguished between police officer testimony to an extrajudicial identification and the victim's testimony to an extrajudicial identification, it should not be followed. *Id.* The Court further elaborated its holding, noting that "such evidence is no longer presumptively inadmissible where declarant and the corroborating witness both testify and are subject to cross-examination." *Id.* Because here we are not distinguishing between the two classes of testimony, and, most significantly, the declarant here did not testify and was not subject to cross-examination, we do not believe *Harris* undercuts *Cook's* rejection of the use, under the circumstances present here, of what amounts to an "interrogation technique" exception as a vehicle to introduce otherwise inadmissible testimony.

son implicated [defendant] as his co-conspirator in the murder." *Id.*

Although the Court rejected the defendant's challenge, its reasons for doing so dramatically illustrate the problem presented by this case:

> Here, the record shows that the court and all counsel were very concerned about avoiding the types of improper inferences of which defendant now complains. The court went over this issue with counsel very carefully outside the hearing of the jury, approving some questions and disapproving others. *The witnesses were directed not to repeat any statements by Mr. Wilson implicating defendant.* To a large extent they were successful, merely testifying about their investigations. When testifying about their discussions with Mr. Wilson, they generally would state that they spoke with him and, then, went to a particular location or talked with a particular witness. *They attempted not to directly inform the jury of statements made by Mr. Wilson, and on the few occasions when they spoke more directly about what Mr. Wilson told them, nothing that they said suggested that defendant was guilty.* The police rather testified as to how they found the gun, and it was admitted that the gun they found was the murder weapon. It was not claimed that the defendant used the gun himself. The police were permitted to explain how they found the murder weapon.

(emphasis added). *Id.* at 532–533.

In contrast to the procedure approved in *Edwards,* here the trial court permitted the prosecutor in his opening statement to repeatedly state not only that Robert Hoover implicated Defendant but specific details of Defendant's participation in the crime as described by Robert Hoover. The trial court also allowed police witnesses to testify repeatedly that Robert Hoover told them Defendant was involved in Jeffrey Sexton's murder. Finally, as here, the defendant in *Edwards* confessed after being told that a co-conspirator had revealed facts of the crime to the police. Nevertheless, at trial, the police witnesses were permitted only to testify on a limited basis to co-conspirator statements that explained the *officers'* subsequent conduct, rather than the defendant's conduct upon hearing the officer repeat to the defendant the co-conspirator's statements.[8]

 The State's position is not only contrary to the principles articulated in *Cook* and the procedures described in *Edwards,* but also constitutes an unjustifiable attempt to expand its only possible precedential basis.[9] The State's position appears to depend analytically on those cases which permit a police officer to testify to a declarant's out of court statements offered to explain the testifying officer's subsequent conduct. *See, e.g., State v. Brooks, supra.* However, the obvious problem

---

8. The concurrence opines that the trial court's conduct was entirely consistent with our Supreme Court's guidance in *State v. Edwards.* To the contrary, it is quite clear that the procedure our Supreme Court approved in *Edwards* is the strict avoidance of police officers testifying that a co-defendant implicated the defendant in the commission of the crime, to wit: "the witnesses were directed not to repeat any statements by Mr. Wilson implicating defendant;" "on the few occasions when they spoke more directly about what Mr. Wilson told them, nothing that they said suggested defendant was guilty." Here, *everything* the police officers said about what Robert Hoover told them suggested that Defendant was guilty.

9. Again, we note that the State failed to cite any cases in support of its specific theory of admissibility in its brief on appeal.

with such a theory of admissibility here is that the State did not use Robert Hoover's statements to police to explain the police officers' subsequent conduct but rather Defendant's subsequent conduct. The *Brooks* line of cases only permits a testifying police officer to discuss the impact of the declarant's statements on the testifying police officer. More importantly, even where police officers are permitted to testify to background and context, courts do not permit the prosecutor to elicit details directly connecting the defendant to the crime. *State v. Robinson*, 111 S.W.3d 510, 515 (Mo.App. S.D.2003); *State v. Shigemura, supra*. Thus, for instance, in this case, the trial court might arguably permit Major Lowery and Detective Carroll to testify that based on information they received they decided to question Defendant. *See State v. Garrett*, 139 S.W.3d 577, 582 (Mo. App. S.D.2004). However, we see no basis for expanding *Brooks* to permit a co-conspirator's testimonial statement directly implicating the defendant to be introduced through a police officer under the circumstances present in this case. *Id.* (noting that while cases such as *Brooks* carve out an exception to the hearsay rule that allows for the supplying of "relevant background," the exception is "susceptible to abuse"); *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir.2004) ("Allowing agents to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination, would go far toward abrogating the defendant's rights under the Sixth Amendment and the hearsay rule."); *McCormick on Evidence* § 249 (6th ed. 2006) ("One area where abuse may be a

particular problem involves statements by arresting or investigating officers regarding the reason for their presence at the scene of a crime. . . . The need for this evidence is slight, and the likelihood of misuse is great.")

As the First Circuit stated in words equally applicable here:

> The dividing line often will not be clear between what is true background to explain police conduct and what is an attempt to evade *Crawford* and the normal restrictions on (and thus an exception to the hearsay rule and thus an exception to *Crawford*) hearsay. But we are on firm ground in warning prosecutors of the risks they face in backdoor attempts to get statements by non-testifying confidential informants before a jury.

*United States v. Maher*, 454 F.3d 13, 23 (1st Cir.2006). Accordingly, we conclude that Robert Hoover's statements to the police referenced during the State's opening statement and admitted after introduced in police officer testimony during the State's case-in-chief were inadmissible.[10]

█ We next consider whether the references to Robert Hoover's statements in the State's opening and their admission in its case-in-chief prejudiced Defendant. We conclude that Robert Hoover's statements directly implicated Defendant in a detailed manner and the prejudice is outcome-determinative. *Compare State v. Warren*, 141 S.W.3d 478, 492 (Mo.App. E.D.2004) (co-conspirator's inadmissible statement not outcome-determinative where statement made no reference to de-

10. The concurring opinion asserts that Robert Hoover's "actual statement" was never elicited, only the fact that Robert Hoover made a statement. This assertion is contrary to the record. Major Lowery and Lieutenant Carroll both testified that Robert Hoover told

them that both he and his father were involved in the Jeffrey Sexton murder. In addition, in the opening statement the prosecutor specifically described additional details of Robert Hoover's statements to the police.

fendant and did not directly inculpate defendant).

First, the State conceded that Robert Hoover's statements to the police were not admissible against Defendant. Yet, the State argues, on appeal, that because the prosecutor did not advise the jury that Robert Hoover "made a confession" but merely stated that the police told Defendant that Robert Hoover confessed and described what he confessed to, the statements implicating Defendant were somehow transformed into nothing more than harmless background or context. Thus, by re-classifying the concededly inadmissible statements, the State "gained extremely damaging inculpatory testimony that could not have been introduced into evidence." *U.S. v. Hall*, 989 F.2d 711, 716–17 (4th Cir.1993).

Second, unlike many reported cases in which courts concluded that a trial court improperly admitted hearsay, but declined to reverse, this is not a case in which there is overwhelming evidence of guilt. *See, e.g., State v. Cook, supra.* Here, although the critical piece of evidence was Defendant's inculpatory statements to the police, there was no audiotape, videotape, written statement or any other record of Defendant's statements. The police officers specifically stated they took no notes during the interview in which they obtained Defendant's statement. Moreover, there were no eye-witnesses or physical evidence linking Defendant to the crime. The murder weapon was never found. Additionally, prior to Defendant's trial, Robert Hoover was acquitted and Dennis Irby obtained a mistrial on the basis of a hung jury. Finally, we note that the trial court did not give a limiting instruction. Where, as here, the challenged hearsay

statement connects the defendant to the crime, "the high probability of prejudicial impact on the jury [is] exacerbated by the fact no limiting instruction was given...." *Shigemura*, 680 S.W.2d at 257. Given the record presented here, Robert Hoover's statements introduced through Major Lowery and Detective Carroll and referenced during the prosecutor's opening statement prejudiced Defendant. Point granted.

■ In his fourth point, Defendant contends the trial court erred in overruling his objection to the admission of the police-initiated recorded telephone conversation between Robert Hoover and Dennis Irby. Defendant argues that this error deprived him of the right to confrontation and cross-examine adverse witnesses in violation of the Sixth Amendment and thus, a fair trial.

■ "Properly preserved confrontation clause violations are presumed prejudicial." *State v. Justus*, 205 S.W.3d 872, 881 (Mo. banc 2006). We uphold the trial court's judgment only if the error was "harmless beyond a reasonable doubt." (citations omitted). *Id.* Harmless error is demonstrated "only if there could be no reasonable doubt that the error's admission failed to contribute to the jury's verdict." *Id.*

■ Generally, out-of-court statements made by a co-conspirator after the crime has been accomplished are hearsay and inadmissible against the other conspirators. *State v. Jennings*, 815 S.W.2d 434, 442 (Mo.App. E.D.1991). However, an exception to the hearsay rule exists for statements of a co-conspirator that are in furtherance of the conspiracy or have the purpose of concealing the crime.[11] *Id.;*

11. With respect to the "in furtherance" and "concealment" requirements, *McCormick on Evidence* explains that:

Under some circumstances, the duration of the conspiracy is held to extend beyond the commission of the principal crime to in-

*State v. Pizzella,* 723 S.W.2d 384, 388 (Mo. 1987). A statement by a co-conspirator made "after the consummation of its purpose, [is] hearsay and inadmissible as to the co-conspirator." (citations omitted). *Warren,* 141 S.W.3d at 492. An accomplice's statement that "inculpates a criminal defendant [is] not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence." *Lilly v. Virginia,* 527 U.S. 116, 134, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999).[12]

The defense first raised the question of the admissibility of the recorded telephone conversation between Robert Hoover and Dennis Irby at the pre-trial hearing on motions in limine. At the hearing, the State described the telephone conversation as follows:

> there is a phone conversation between Robert Hoover and Dennis Irby that lasted for about 17 minutes, in which the police recorded Rob Hoover talking to Dennis Irby on the telephone with Rob Hoover being aware that *this was staged to try to get Dennis Irby to make state-*

*ments against his interest ....* (emphasis added).

As grounds for opposition to the motion in limine, the State explained as follows:

> ... it's our belief that that should be allowed because Dennis Irby's statements are statements made in furtherance of the conspiracy, or to cover up the conspiracy of the murder, so that that phone conversation, although it does include words spoken by Rob Hoover and Dennis Irby, is admissible under the co-conspirator exception to the hearsay rule, which are statements made in furtherance of the conspiracy, or the attempt to cover up the conspiracy or the crime afterwards.

Defense counsel responded to the State's argument by raising Defendant's Sixth Amendment right to confrontation and specifically *Bruton v. U.S.,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In reply, the prosecutor countered that: "I don't think the *Crawford* case overruled any of the co-conspirators' statements, exceptions to hearsay."[13] Without explana-

---

clude closely connected disposition of its fruits or concealment of its traces, as in the case of police officers engaged in preparing a false report to conceal police participation in a burglary, disposal of the body after a murder, or continuation of a racketeering enterprise that involved on-going concealment to effectuate this scheme. (citations omitted).
McCormick on Evidence § 259 (6th ed.2006).

**12.** We note that in *Lilly,* the Court explained that it was not imposing a blanket ban on accomplice confessions that implicate a defendant. *Id.,* fn. 5. However, the Court stated that "when deciding whether the admission of a declarant's out-of-court statements violates the Confrontation Clause, courts should independently review whether the government's proffered guarantees of trustworthiness satisfy the demands of the Clause." *Id.* at 137, 119 S.Ct. 1887. Here, the record reveals that the trial court did not review the trustworthi-

ness of the statements. Moreover, if the statements are deemed to be testimonial, which we do not decide today, the trial court considers only "unavailability and a prior opportunity for cross-examination." *Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**13.** With respect to the State's position at trial on *Crawford's* impact on the analysis of state law as it relates to hearsay exceptions, we note the following language in *Crawford:*

> ... we once again reject the view that the Confrontation Clause applies of its own force only to in-court testimony, and that its application to out-of-court statements introduced at trial depends upon 'the law of Evidence for the time being.' (citations omitted). Leaving the regulation of out-of-court statements to the law of evidence, would render the Confrontation Clause

tion, the trial court denied Defendant's motion.

At trial, Lieutenant Paul Banta testified about the creation of the Dennis Irby/Robert Hoover tape as follows:

[STATE]: Okay. And at some point in the afternoon, did you help arrange a phone call that was to be recorded with Robert Hoover's cooperation?

[BANTA]: Yes, I did.

[DEFENSE COUNSEL]: Your honor, I'd like to object previously to—our motion prior to trial concerning the right of confrontation of Ervell Hoover, there's no way that I can confront the witness here.

THE COURT: Objection noted, running objection. You may proceed, Mr. McSweeney.

Q: (By Mr. McSweeney) So how did you go about setting up the recorded phone call with Robert's cooperation?

A: I obtained a tape recorder and fastened the tape recorder to a telephone at the station, small digital tape recorder, and Robert Hoover dialed the number to Mr. Dennis Irby.

Q: Was that what you and Rob Hoover were cooperating to do?

A: Yeah, he agreed to do that for me, yes.

Q: And what was—specifically to do what?

A: To try and get Mr. Irby to make an incriminating statement about the gentleman's murder.

Q: So did you sit down with Rob Hoover before this call was made to go over some things you wanted him to cover on the phone call?

A: Yeah, I told him what I wanted him to accomplish.

Q: Okay. And did he appear willing to help you?

A: Yes, sir.

Q: Okay. Was it planned to be with or without Dennis Irby's knowledge that he was cooperating with you, that Rob Hoover was cooperating?

A: He definitely want (sic) Mr. Irby to know he was cooperating with us.

Q: So, it wasn't told to Mr. Irby on the phone call?

A: No, absolutely not.

Q: Were you listening to the phone call as it was being made and recorded?

A: Yes, sir, I was present.

When the defense objected on the basis of violation of the Confrontation Clause, the State advised the trial judge as follows:

... I just wanted the record to make clear that I'm offering this as Dennis Irby being a co-conspirator, unaware of the statement being listened to by the police, and these statements are made as a co-conspirator and it will become clear during the course of the conversation that his statements makes (sic) in furtherance of the conspiracy or the cover-up (sic) of the conspiracy, trying to persuade Rob not to talk to the police and so forth.

So that's what I want—and also, there are portions in here which speak in terms of Dennis Irby telling Rob they can't make you take a polygraph or a lie detector test, something like that. We're not talking about Rob taking a polygraph or passing a polygraph in reality, this is all part of the staged phone call that Banta, this witness and Rob Hoover made with Dennis Irby.

powerless to prevent even the most flagrant inquisitorial practices. 541 U.S. at 50–51,

124 S.Ct. 1354.

Following the State's explanation, defense counsel again stated "I have no way to confront these witnesses" and asked for a mistrial. The trial court denied the request for a mistrial and allowed the recording to be played in its entirety and also permitted the State to provide a transcript of the recording to each juror.

The recording consisted largely of Robert Hoover relating to Irby his belief that the police were pressuring him, and Irby's reaction to Robert Hoover's concerns. However, early in the conversation, Robert Hoover directly implicates Defendant:

> No, I know, but they are convinced that it's somebody in the family, and they've had me and my dad here and [INAUDIBLE] mom, I mean it came up in the paper that was a shooting, *and my dad told me where the gun came from, I know where it came from, and I'm worried about it getting traced back to us.* These cell phone calls, the one that I was worried about—. (emphasis added).

The tape continues with Irby repeatedly trying to calm Robert Hoover and counseling him to obtain an attorney and refrain from speaking to police before obtaining an attorney: "Honest to God, I wouldn't say another word until you got an attorney;" "Robert, honest to God, really, man, I wouldn't say another word until you got an attorney, and tell them that, you know, you've been cooperating all along, it sounds to me like they are trying to get you to admit something that you didn't do." When Robert Hoover asks Irby if he should "try to get out of town," Irby replies: "No, God, no, you haven't done anything wrong, you need an attorney. You don't run when you're innocent, God no man...." At the end of the tape, Robert Hoover says good bye and Irby can be heard commenting, "Lying son of a."

At the time of the creation of the Robert Hoover/Dennis Irby recording, Robert Hoover was no longer acting in furtherance of the conspiracy. Rather, as the State concedes, Robert Hoover was acting on behalf of the police in an attempt to elicit incriminating statements from Dennis Irby following the murder of Jeffrey Sexton. In short, once Robert Hoover began working for the police to inculpate Irby, he became an agent of the police. *See State v. Perkins,* 753 S.W.2d 567, 570 (Mo.App. E.D.1988) (brother "upon agreeing to foster police efforts to inculpate [defendant] became an agent of the police"). The call was set-up by the police and originated at the police station. The goal of the call was "to try and get Mr. Irby to make an incriminating statement about the gentleman's murder." Prior to the call, Lieutenant Banta and Robert Hoover sat down and "went over some things to cover on the phone call." Lieutenant Banta listened to the telephone call as it was being made. Accordingly, we find Robert Hoover's statements on the recording do not fit within the co-conspirator exception to the hearsay rule and admission of the tape recording violated Defendant's Sixth Amendment rights.[14]

▮ Likewise, we conclude that Irby's statements constituted inadmissible hearsay. Here, the State argues that Irby's statements were in furtherance of the conspiracy to murder Jeffrey Sexton because: "the conspiracy, in Irby's mind, was continuing for the purpose of preventing or defeating prosecution for the crimes and the statements were made to ensure Robert's assistance in not giving the police

---

14. Both at trial and on appeal, the State proffered no basis for the admission of Robert Hoover's statements on the recording.

department any information about the crime or Irby's involvement." However, the record establishes that Irby's statements were not attempts to defeat prosecution or conceal the crime as those concepts have developed under Missouri law. *See State v. Cornman*, 695 S.W.2d 443, 447 (Mo. banc 1985) (conspirator continued with plot to murder intended victim, telling co-conspirators "[everybody] kept their mouth shut," that he planned to implicate two persons to conceal his involvement and mislead authorities, and that two conspirators should avoid each other for a month); *State v. Grebing*, 787 S.W.2d 877, 881 (Mo. App. W.D.1990) (false statements concerning victim's whereabouts represent attempts to conceal crime).[15] The closest the recording comes to a discussion of concealment occurs when Robert Hoover suggested he should flee. However, rather than agreeing with Robert Hoover that he should leave town, Irby counsels against it. The only other arguable instance of concealment on the recording consists of Irby's reply of "[d]on't say it" following Robert Hoover's statement that "he did not want to go to jail for something he did not do." Given the ambiguity of this comment, it is not a sufficient basis to bring this seventeen minute tape within the ambit of the co-conspirator's exception to the hearsay rule.

The State has cited no cases in support of its position that the provision of advice to obtain a lawyer prior to further discussions with the police constitutes concealment or an attempt to defeat prosecution. Instead, the State relies on *Moss v. State*, 10 S.W.3d 508 (Mo. banc 2000) and *State v. Clay*, 975 S.W.2d 121 (Mo. banc 1998). Both of these cases are factually inappo-

site. In *Moss*, the co-conspirator's declaration that he had told his girlfriend "all about it" was made in furtherance of the conspiracy "because it was made while the men were dividing the proceeds of the robbery." 10 S.W.3d at 512. The conclusion that statements made while dividing up "loot" were in furtherance of the conspiracy do not support a determination that a police-initiated recording in which one conspirator tells another conspirator, who is acting on behalf of the police, to hire an attorney is in furtherance of a conspiracy.

*State v. Clay, supra* is similarly unhelpful. In *Clay*, the state elicited testimony about statements made by the defendant's co-conspirator (the victim's wife) moments after the defendant shot the victim in the co-conspirator's presence and drove away in the car provided by the co-conspirator. The statements included the following comments: "they shot him", "they took my car" and "I can't believe they done it." 975 S.W.2d at 131. The Court did not analyze the nature of the statements but simply determined that they were admissible under the co-conspirator exception to the hearsay rule. *Id.* at 132. In any event, a statement made while the co-conspirator watches the defendant drive off in the car the co-conspirator provided and which is made prior to any police involvement is quite different than the circumstances present here.

Having found that introduction of the recording violated the Confrontation Clause, we consider whether the "error was harmless beyond a reasonable doubt." *Justus*, 205 S.W.3d at 881. As we noted

15. Considering the police officers themselves are required to advise a suspect that he has the right to remain silent, the right to talk to a lawyer and the right not to answer questions, it seems patently illogical that a co-conspira-tor is furthering a conspiracy or concealing a crime by making nearly identical representations to a conspirator who is working for the police.

above, Robert Hoover directly implicated his father on the recording: "... my dad told me where the gun came from, I know where it came from, and I'm worried about it getting traced back to us." A primary State objective at trial was proving that Defendant supplied to Dennis Irby the gun used to kill Jeffrey Sexton. Major Lowery testified at trial that after he told Defendant "Robert had confessed fully to the killing and that he implicated [Defendant]," Defendant stated that he provided Irby with a gun. The defense attempted to counter the State's evidence through a cross-examination focused on a police failure to document in any way Defendant's purported statements. In light of the undisputed absence of any record of Defendant's statements such as a videotape, an audiotape, written confession or contemporaneous notes, a recording of Robert Hoover stating that his father told him where the gun came from cannot be characterized as harmless error beyond a reasonable doubt.[16] Point granted.

### Conclusion

The judgment of the trial court is reversed and the cause is remanded for a new trial.

BOOKER T. SHAW, C.J., Concurs.

LAWRENCE E. MOONEY, J., Concurs in separate opinion.

LAWRENCE E. MOONEY, Judge, concurring.

I concur in the reversal of the judgment of conviction and the remand for a new trial because the recorded telephone conversation between Robert Hoover and Dennis Irby was hearsay, and the conversation was not admissible as a statement of co-conspirators.

However, I write separately to express my view that limited evidence of Robert Hoover's alleged confession is permissible to explain the circumstances of the defendant's confession.

Let me first recount the circumstances of the trial so that I might offer my thoughts on the manner of retrial. In his opening statement, the prosecutor explained to the jury that the police employed an interrogation technique to induce the defendant's confession. The prosecutor then set out in unnecessary and improper detail the information that may have been told to the defendant to induce him to confess. This was that Robert Hoover, the defendant's son, had implicated Ervell as having helped move Lois's car to the Des Peres Schnucks parking lot so that Dennis Irby could use a car with Missouri plates and as having provided a gun to Dennis Irby the week earlier when Dennis was in town. The prosecutor made clear that he was not vouching for the truthfulness of what the police told the defendant to induce his confession. Indeed, the trial court, in overruling the defendant's objection, noted that the prosecutor told the jury the relayed information might not be true. The difficulties with this argument are two-fold. First, the prosecutor should not include in his opening statement matters unsupported by the evidence. Second, the use of unnecessary details from an out-of-court declarant could support an inference of truth, despite the prosecutor's claims that this was but an interrogation technique. When, in fact, the three police officers later testified to the defendant's confes-

**16.** Given our disposition with respect to Robert Hoover's statements, it is unnecessary to decide whether Dennis Irby's statements are harmless. Because we have decided both

Robert Hoover's and Dennis Irby's statements are inadmissible hearsay, the tape in its entirety is inadmissible against Defendant upon retrial.

sion, two officers, Major Lowery and Detective Carroll, testified that they had told the defendant only that Robert Hoover implicated him and Dennis Irby in planning Jeffrey Sexton's murder. The police officers did not, however, relate to the jury any details with which the defendant may have been confronted. Indeed, Major Lowery testified he did not use any details of Robert Hoover's alleged confession in confronting the defendant, but rather kept matters "intentionally vague." The police also confirmed that the confrontation of a suspect with a co-conspirator's alleged confession, whether true or false, was a standard interrogation technique. The third officer who testified to the defendant's confession, Detective Banta, never mentioned any allegations with which the defendant was confronted to induce his confession. Importantly, no officer testified that Robert Hoover actually confessed or implicated the defendant, only that the police told the defendant as an interrogation technique that Robert had implicated him.

The circumstances of defendant's confession, as testified to by the police officers, did not result in the admission of unnecessary details of Robert Hoover's alleged confession. Instead Robert Hoover's alleged implication of the defendant was minimally adduced to elucidate the circumstances of the defendant's confession and the prosecutor again made clear that the claimed implication of a suspect by a co-conspirator was a standard interrogation technique. The admission of this limited evidence is consistent with our Supreme Court's guidance in *State v. Edwards* because the claimed implication of the defendant by a co-conspirator was presented without detail and as an interrogation technique, not as the true statement of an out-of-court declarant.

The critical issue in hearsay analysis is whether the out-of-court declaration, Robert Hoover's confession, is offered for the truth of the matters asserted therein. 29 Am.Jur.2d *Evidence* sec. 661 (1994). If the details of Robert Hoover's alleged confession are not placed in evidence and the prosecutor makes clear that he does not vouch for the truthfulness of the information with which the police may have confronted the defendant, there is no implication that Robert Hoover's alleged confession is true, and thus no hearsay problem.

There is a stark difference between Robert Hoover's actual statement to the police, which was rightly never elicited, with the mere use of the fact that Robert Hoover allegedly made a statement. The fact that he allegedly made a statement is neither hearsay nor testimonial. The hearsay rule does not exclude evidence offered to prove the fact that a statement was made, rather than the truth of the statement. Or, as Wigmore put it:

> Wherever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the hearsay rule is concerned.

6 Wigmore, Evidence sec. 1789 (Chadbourn rev.1976).

Summarily put, I cannot conclude that an out-of-court declaration is proffered for its truth when its truth is disavowed.